## State of Vermont v. Joshua S. Putnam

[675 A.2d 422]

No. 95-344

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 12, 1996

*Dan M. Davis*, Windham County State's Attorney, and *James Maxwell*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Paolini*, Barre, and *Stephen L. Fine*, Athens, for Defendant-Appellant.

**Dooley, J.** Defendant, who has been charged with two counts of sexual assault, moved to disqualify Judge Theresa DiMauro, the presiding judge in the Windham District Court. Pursuant to V.R.Cr.P. 50(d)(3), Judge DiMauro referred the disqualification motion to the administrative judge for the trial courts, who denied the motion. We granted an interlocutory appeal. We affirm.

The disqualification motion is before us on a sparse factual record. State police officers stationed in the Rockingham barracks conducted the investigation of the sexual assaults allegedly committed by defendant. The officer who led the investigation, Detective Sergeant David Tetrault, is on the State's witness list. Two other officers, Troopers Burns and Cutting, were also involved in the investigation. Judge DiMauro is married to Vincent DiMauro, who is a state police trooper also stationed in the Rockingham barracks. Trooper DiMauro was not part of the investigation, nor do any of the troopers who may testify have a supervisory relationship over him. In fact, there are two separate units that work out of the barracks: the bureau of criminal investigation in which the potential witnesses work and the uniform patrol division in which Trooper DiMauro works. Defendant presented no evidence indicating either that Trooper DiMauro has any

connection to the arrest or investigation of defendant, or that Judge DiMauro is familiar with the investigating officers.

The heart of the decision of the administrative judge is found in his rejection of defendant's claim that "at least one close working associate of [Judge DiMauro's] husband and perhaps more than one will testify":

> The assertion that "one close working associate" will testify, [with whom a personal relationship exists between Trooper DiMauro and/or Judge DiMauro,] is unsupported by any evidence. The defense does not name the "close associate" or indicate whether this "associate" has any connection to this case and/or is expected to testify. Although it may be *reasonable* to believe that personal, as well as professional relationships exist, the defense does not offer any detail to support the assertion. While the existence of a personal relationship between either Judge DiMauro and/or her husband and a potential witness in this proceeding would be relevant to this court's inquiry, no such evidence is presented in this case.

The judge also concluded that the marital relationship between a judge and a state police officer who works in the same barracks as an officer who will testify in a case before the judge does not automatically require disqualification of the judge.

Some background in our law is important to understanding the issue before us. We have adopted, with some minor technical variations, the 1990 American Bar Association Model Code of Judicial Conduct. See Reporter's Notes, A.O. 10, Canon 3. The Code contains specific per se disqualification rules, none of which are involved here. See A.O. 10, Canon 3E(1)(a)-(d). It also contains the general standard relied upon by the defendant here: a judge must disqualify himself or herself "in a proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, Canon 3E(1).

We have recently detailed our approach to disqualification issues, relying on procedural reforms. Our former approach was set out in *Richard v. Richard*, 146 Vt. 286, 288, 501 A.2d 1190, 1191 (1985), where we held that a judge must be disqualified "whenever a doubt of impartiality would exist in the mind of a reasonable, disinterested observer." We observed that "'if the slightest question exists, all doubts should be resolved' in favor of disqualification," *id.* (quoting

*Condosta v. Condosta,* 137 Vt. 35, 36, 401 A.2d 897, 898 (1979)), a standard required because the judge subject to the motion to disqualify would decide if disqualification were appropriate. After *Richard,* we adopted a procedure for referring trial judge disqualification motions to the administrative judge for the trial courts. See V.R.Cr.P. 50(d)(3). As a result, the "slightest question" standard of *Richard* is no longer the law. See *Ball v. Melsur Corp.,* 161 Vt. 35, 39-40, 633 A.2d 705, 710 (1993). In *Ball,* we emphasized that a judge subject to a disqualification motion is accorded a presumption of honesty and integrity and that because reasonable minds can differ on an issue, discretion must be accorded to the administrative judge for the trial courts in deciding disqualification issues. *Id.* at 39-40, 633 A.2d at 709-10. We held that the standard for review of disqualification decisions of the administrative judge is "abuse of discretion, that is, if the record reveals no reasonable basis for the decision." *Id.* at 40, 633 A.2d at 710.

Defendant urges us to impose a per se rule that disqualifies a trial judge from a criminal case if his or her spouse is a police officer and works in the same barracks as an officer who is a potential witness in the case. For two major reasons, we decline to impose the rule sought by defendant.

First, "per se" rules are generally inappropriate in judicial disqualification issues of this type, and such a rule is inappropriate here. The Code contains detailed per se disqualification rules for circumstances where we have decided that disqualification is always required. See A.O. 10, Canon 3E(1)(a)-(d). Thus, the drafting is generally inconsistent with adding new per se rules. For this primary reason, we declined to fashion a per se disqualification rule in *Ball* to cover instances where the judge is subject to a judicial conduct complaint by a lawyer who is appearing in a case before the judge. See *Ball,* 161 Vt. at 39, 633 A.2d at 709-10 ("On its face, the 'reasonable disinterested observer' standard of Canon 3C(1) [now 3E(1)] forestalls such an inflexible per se rule, but instead enables the decisionmaker to take particular circumstances into account.").

Moreover, we clearly decided to move away from overly rigid disqualification rules when we entrusted these decisions to the administrative judge. Thus, we stated in *Ball* that because "reasonable minds may differ on an issue, a certain degree of discretion inheres in the determination of whether a judge's impartiality may be doubted in a given situation." *Id.* at 39, 633 A.2d at 709. We held that where the trial judge does not grant a disqualification motion, "the

question of recusal hinges on the administrative judge's exercise of discretion." *Id.* at 40, 633 A.2d at 710.

There is nothing special about the conflict involved here that necessitates a per se rule in spite of our holding in *Ball.*[1] Courts interpreting identical or similar judicial ethics standards have not adopted per se rules in cases where friends or associates of a judge appear as witnesses, see *United States v. Kehlbeck,* 766 F. Supp. 707, 712 (S.D. Ind. 1990) (no per se disqualification where "friend appears as counsel, party, or witness"; collecting cases); *State v. Romano,* 456 A.2d 746, 754 (R.I. 1983) (no per se rule because of judge's "professional, social, or business relationships"), or in cases where a spouse or other relative is employed by, or is otherwise aligned with, a party appearing before the judge, see *Bernard v. Coyne,* 31 F.3d 842, 845 (9th Cir. 1994) (appeals judge not disqualified from bankruptcy case in which trustee challenged exemptions claimed by debtors even though judge's wife was United States Bankruptcy Trustee for judicial district); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 882 F.2d 1556, 1568 (Fed. Cir. 1989) (no per se rule where judge's son employed by plaintiff), *cert. denied,* 493 U.S. 1076 (1990); *United Farm Workers of America, AFL-CIO v. Superior Court,* 216 Cal. Rptr. 4, 10 (Ct. App. 1985) (in suit over labor strike, judge not disqualified because his wife worked two days for plaintiff· employer as replacement worker; disqualification decision based on applicable factors); *State v. Calhoun,* 511 A.2d 461, 491 (Md. 1986) (in post-conviction relief

---

[1] Justice Johnson argues in her dissent that a police officer should be treated the same as a prosecutor so that we should view this case as if Judge DiMauro were married to a prosecutor. Although we do not agree with this premise, we do not see a different result even if the premise is accepted. The commentary to Canon 3E(1) of the Model Code of Judicial Conduct, from which the provision before us is taken, states this directly: "A lawyer in a governmental agency does not ordinarily have an association with other lawyers employed by that agency. . . ." and goes on to add "[t]he fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge." Model Code of Judicial Conduct Canon 3E(1), cmt. (1990). Addressing this exact question, a recent commentary wrote:

> [T]he very nature of these intangible considerations prevents the formulation of a bright line rule stating when such a conflict necessitates recusal. Thus, each case must undergo a fact specific and party specific analysis and be decided in accordance with those individual findings. That is, one must ask, given the facts of the case, the people involved and the potential issues relating to the facts and people involved, whether the interest of the judge's spouse and the involvement of that spouse are extensive enough to warrant the judge's recusal.

M. Brandsdorfer, *Lawyers Married to Judges: A Dilemma Facing State Judiciaries — A Case Study of the State of Texas,* 6 Geo. J. Legal Ethics 635, 660 (1993).

proceeding involving defendant who killed police officer, judge not disqualified because his father was chief of same police department for fifteen years, because he had other relatives who were police officers, or because his cousin was police officer who was killed in line of duty), *cert. denied*, 480 U.S. 910 (1987); *People v. Taylor*, 482 N.Y.S.2d 968, 970-71 (County Ct. 1984) (no disqualification of judge because his wife was probation officer and defendant's father was also probation officer in same county). We see no reason to reject these precedents because the witness is a police officer.

Second, it was defendant's burden, as moving party, to make a record on which a decision could be reached. See *Ball*, 161 Vt. at 40, 633 A.2d at 710 (moving party has burden to make "clear and affirmative showing of bias and prejudice"). The record here is virtually nonexistent. At best, this is a case where a party seeks a judge's disqualification because a person who works in the same office as the judge's husband may be a witness, giving unspecified testimony. We know that the office contains twelve police officers, in two divisions (patrol officers and criminal investigators), and the witness or witnesses are not in the same division as the judge's husband. We also know there is no supervisory relationship between the witness or witnesses and the judge's husband. The witness or witnesses involved, because they are police officers, are aligned with the State and want it to prevail. As the administrative judge found, there is no evidence that Trooper DiMauro is a close working associate with any of the potential witnesses.

■ To prevent the appearance inquiry from turning into the speculation of a suspicious mind, the standard necessarily requires that the objective observer know and understand all the relevant facts. See *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988), *cert. denied*, 490 U.S. 1102 (1989). Moreover, the questioning of the judge's impartiality must not be based on unsupported opinion, baseless conclusions or rumors. See *State v. Hunt*, 147 Vt. 631, 631, 527 A.2d 223, 223 (1987); *Maier v. Orr*, 758 F.2d 1578, 1583 (Fed. Cir. 1985); *Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635, 639 (Colo. 1987). Media reports are not a proper basis for a recusal motion. *Hunt*, 147 Vt. at 632, 527 A.2d at 223.[2] We must "wrestle with

---

[2]Although acknowledging this rule, defendant attached to his brief a newspaper editorial categorizing the recusal question as "vexing and urgent," but requiring a "well-considered but speedy resolution." There is no indication that the editorial is based on any more facts than are before us.

the problem . . . and look closely at our ethical and constitutional obligations." *In re Vermont Supreme Court Admin. Directive No. 17*, 154 Vt. 217, 224, 576 A.2d 127, 131 (1990).

Defendant's arguments are in direct conflict with these requirements. Because we know few of the relevant facts, it is easier to say that the judge's impartiality might reasonably be questioned. Moreover, defendant's argument is based on the assumption that there is some overriding significance to a state police "barracks" in determining whether to disqualify the judge.[3] Thus, defendant seeks a per se rule that applies to cases investigated by an officer in the same barracks, but not at all to cases investigated by officers from a different barracks. Nothing in the record addresses that significance. For all we know, uniformed patrol officers have no professional and social interaction with criminal investigators within the barracks, but do have extensive interactions with uniformed officers from other barracks and other police forces. We decline to speculate on the inner workings of law enforcement units without some evidence from the party who seeks the disqualification on which the law enforcement relationships are based.

■ We review the administrative judge's decision on a motion to disqualify only for abuse of discretion, looking to determine "if the record reveals no reasonable basis for the decision." *Ball*, 161 Vt. at 40, 633 A.2d at 710. Based on the very limited record supplied by defendant, the administrative judge thoroughly examined defendant's grounds for questioning the trial judge's impartiality and rejected them. We find no abuse of discretion.

Defendant has also argued that Judge DiMauro's involvement in his case denies him due process of law because "the marital relationship between one of those who enforces the law and one who interprets the law is far too cozy for the comfort of the Due Process

---

[3] According to published sources, the Vermont State Police are organized primarily around troops. The officers in the case are in Troop D, which includes stations (or barracks) in Rockingham and Brattleboro. See Vermont Dep't of Public Safety, 1990 Annual Report 2, 9 (1991); The National Survey, Vermont Year Book 26 (1995). Troopers are also members of special units and teams, like the tactical support unit (ten troopers) and the dive team (eight troopers). 1990 Annual Report at 11, 16. We also understand from cases argued in this Court that state police officers can be members of task forces, organized to combat specific criminal activities like child sexual abuse, domestic violence or drug selling and usage. We have no information on whether the judge's husband is a member of any of these organizational units. Nor do we have any information on how close the working relationship is among officers in separate stations, but within the same troop.

Clause." We agree that defendant is constitutionally entitled to a "fair trial in a fair tribunal." *In re Murchison*, 349 U.S. 133, 136 (1955). For essentially the same reason that we reject defendant's ethical challenge, we reject the due process challenge. Defendant has failed to demonstrate that Judge DiMauro will be other than fair and impartial.

*Affirmed.*

**Morse, J., dissenting.** I agree that the standard of review is "abuse of discretion," and I can imagine a like case where additional factors might support an affirmance. But, in my opinion, the essential facts, the very "sparse[ness of the] factual record," require Judge DiMauro's disqualification. There simply are no facts to weigh on the other side of the question. The Court's imposition of the burden on defendant to dispel any doubt that the perception of partiality requires the judge's disqualification turns the standard of review on its ear. In my view, once the threshold is reached, it is up to the State to overcome the force of defendant's argument. In this case, the State presented nothing to rebut the appearance of partiality, and I conclude there is "no reasonable basis" for affirmance.

The unavoidable public view in Vermont is that a twelve-officer state police barracks is a tightly knit organization of peace keepers dedicated to serving and protecting the community. The import of the Court's opinion is that this perception is not borne out for lack of detail in the evidence, and is merely "the speculation of a suspicious mind." But, it takes no "evidence" to establish that officers in the Rockingham barracks should care deeply about how the judges at Windham District Court handle the cases generated by any one of them.

This case is not an isolated incident where spouses' professional roles just happen to cross. The judge's husband is permanently employed at the Rockingham barracks, which is the state police venue for Windham County. Judge DiMauro's court and Trooper DiMauro's office are involved in one case after another. It is no stretch to imagine that employees in those two places take more than a passing interest in the interaction of their work. For instance, the judge might be required to rule on a motion to suppress the fruits of a search conducted by a local state trooper, one of her husband's eleven co-workers. Not only will the judge be conscious of the potential reactions her ruling may engender at the barracks, she will be aware also that she will have to make such rulings again and again.

Finally, there are no countervailing concerns here about a disruption in the efficient administration of the court. Defendant gave plenty of warning by filing his motion to recuse before the judge's investment in the case was significant enough to cause a hardship to anyone. In fact, the Court's affirmance redirects the hardship the other way, onto the moving party, as Justice Johnson points out in her dissent.

None of the cases cited by the Court establishes anything like the kind of blanket authority it has created here. The administrative judge is given limitless discretion. There is nothing in the standard created today that would stop the administrative judge from allowing Judge DiMauro to sit on a case investigated by another member of the *uniformed patrol* division in the Rockingham barracks or even one Trooper DiMauro himself investigated. I am not saying by this that the Court would approve of Judge DiMauro sitting, only that the Court has given no parameters for the administrative judge to use in ruling on future cases. In sum, I think this case stretches discretion beyond the breaking point.

I respectfully dissent.

**Johnson, J.,** dissenting. The majority concludes that a judge may preside over a criminal trial even though the judge is married to a state police officer who works in the same small barracks as the investigating officers in the case. Today's decision, rather than simply requiring Judge DiMauro's disqualification in every case in which officers of the Rockingham barracks are involved as investigators, arresting officers, or witnesses, instead requires a fact-specific determination in every such case in which the defendant seeks Judge DiMauro's disqualification. Because I believe the majority's decision encourages defendants to pry into the personal lives of Judge DiMauro and her husband, creates an unnecessary administrative burden for the administrative judge and this Court, and, most importantly, permits the public and criminal defendants to entertain doubt as to the integrity of the criminal process, I respectfully dissent.

Both the majority and the administrative judge emphasize the lack of a detailed factual record showing any relationship between Judge DiMauro or Trooper DiMauro and the officers involved in this case, other than Trooper DiMauro's position as a fellow officer in the twelve-officer Rockingham barracks. Yet the "heart of the decision of the administrative judge," 164 Vt. at 560, 675 A.2d at 423, includes an acknowledgment that "it may be *reasonable* to believe that personal, as well as professional relationships exist" and, moreover, that "the

existence of a personal relationship between either Judge DiMauro and/or her husband and a potential witness . . . would be relevant." 164 Vt. at 560, 675 A.2d at 423. The majority apparently accepts that (1) a personal relationship between Judge DiMauro or Trooper DiMauro and an officer involved in the case might be enough to require Judge DiMauro's disqualification, and (2) a reasonable person would likely believe, under these circumstances, that such relationships do exist. Nonetheless, the majority holds that Judge DiMauro may preside over defendant's case.

Although I have no reason to doubt Judge DiMauro's fairness and integrity, in this or any other case, I believe that these two propositions, which I also accept, compel an opposite result. Our first priority in resolving a difficult question such as this must be the preservation of public trust in the judiciary. For a number of reasons, permitting Judge DiMauro to preside over criminal cases that involve officers from her husband's barracks raises an appearance of impropriety and unnecessarily exposes the judiciary to public criticism.

Of critical importance is the fact that this is not an ordinary civil trial, and the officers involved are not ordinary witnesses. The appearance, as well as the reality, of fair and impartial proceedings is especially important in a criminal trial. Criminal defendants have more at stake than a possible monetary loss. They face a possible loss of liberty. What stands between a defendant and the power of the state is the judge and, if the case goes to trial, the jury.[1] An apparent connection between a presiding judge and the agents of the state who are prosecuting a case undermines the judge's function as an impartial arbiter between the defendant and the state.

The majority maintains that defendant is seeking Judge DiMauro's disqualification merely "because a person who works in the same office as the judge's husband may be a witness, giving unspecified testimony." 164 Vt. at 563, 675 A.2d at 425. This characterization of the facts is disingenuous. Police officers who testify in criminal cases are not ordinary witnesses. As a result of both the officers' official duties and the typical collaboration between investigating officers and prosecutors, police officers in criminal cases appear to be an arm of the state. I see little difference between this case and one in which the presiding judge is married to a member of the state's attorney's office. Indeed, in one way the connection is more troubling: because of

---

[1] A marital relationship between a juror and an officer in the Rockingham barracks would likely entitle defendant to strike the juror for cause.

the importance of police investigatory work in criminal trials, Judge DiMauro will likely be called upon in some of these cases to make rulings that turn on the competence and credibility of Trooper DiMauro's fellow officers.

I am concerned as well by the practical consequences of the majority's decision. By requiring defendants to produce evidence showing that either Judge DiMauro or Trooper DiMauro has some specific connection to the officers involved in their cases, the Court encourages future defendants to probe the private lives of Judge DiMauro and her husband, in the hope of unearthing relevant information. Judge DiMauro's social relationships will be the subject of routine investigations by defendants.

Not only will the DiMauros' privacy be invaded, but our scarce judicial resources will be expended on future motions like this one. The administrative judge will be forced to hold lengthy evidentiary hearings as defendants attempt to make out a sufficient factual record to support disqualification. Review of these motions will also absorb the time of this Court, while unnecessarily delaying the underlying criminal proceedings.

Defendant urges this Court to avoid these problems by adopting a "per se" rule requiring Judge DiMauro's disqualification in cases involving officers from the Rockingham barracks. Rejecting this approach, the majority makes two arguments: first, that fashioning a per se rule in this case is inappropriate, because the Code of Judicial Conduct provides the list of circumstances in which the Court has decided that disqualification is always required; and second, that by entrusting disqualification decisions to the discretion of the administrative judge, we signaled a shift away from rigid disqualification rules.

Although it is true that this case does not fit within any of the disqualification rules of the Code, A.O. 10, Canon 3E(1)(a)-(d), I see no reason to conclude that the Code's list of disqualification rules is exhaustive. In a state of this size, conflicts are certain to occur frequently. If such questions were typically litigated, we would quickly find that the specific rules contained in the Code of Judicial Conduct barely scratch the surface of this issue. For example, those rules do not cover situations in which a judge has a social relationship with a party, yet we have found such a situation troubling enough to require disqualification. See *Richard v. Richard*, 146 Vt. 286, 288, 501 A.2d 1190, 1191 (1985) (requiring disqualification of assistant judges based on social relationship with plaintiff). This Court does not face

these questions often, however, because judges usually go beyond the requirements of the rules, either simply recusing themselves for any reason that might cast doubt on their impartiality, or disclosing the information and then recusing themselves if a party so requests.

Fortunately, this informal system works well, and permits this Court, and the administrative judge, to avoid most sticky disqualification questions. Nonetheless, troubling situations may develop that, like this one, are difficult to pigeonhole within the rules, but are best resolved with a simple and straightforward requirement of disqualification. This approach is not inconsistent with our decision in *Ball v. Melsur Corp.*, 161 Vt. 35, 39-40, 633 A.2d 705, 710 (1993), in which this Court recognized that the administrative judge has discretion in deciding disqualification issues. That discretion is appropriate when the administrative judge reaches a decision after weighing evidence and resolving disputed factual questions. Here, however, I believe the best approach is to establish a rule that prevents such fact-based disputes from ever reaching the administrative judge.

I would reverse the decision of the administrative judge, and require Judge DiMauro's disqualification in this case, and any case involving officers from the barracks where Trooper DiMauro is stationed as investigators, arresting officers, or witnesses.[2]

---

[2] If both parties agree, of course, they may notify the court clerk that Judge DiMauro may preside over a case that involves officers from the Rockingham barracks.