## In re William Hunter

[704 A.2d 1154]

No. 96-490

Present: Amestoy, C.J., Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed October 3, 1997

Motion for Reargument Denied November 3, 1997

*William A. Hunter*, Cavendish, Pro Se, Appellant.

*William M. Dorsch* of *Mickenberg, Dunn, Sirotkin & Dorsch*, Special Bar Counsel, Burlington, for Appellee.

**Per Curiam.** Respondent William A. Hunter challenges the Professional Conduct Board's recommendation that he be suspended from the practice of law for three years. His principal contention is that the recommendation is unduly harsh because the Board failed to consider several mitigating factors and refused to reopen the case to take new evidence on his mental condition. He also argues that if we accept the Board's recommendation, we should impose the sanction retroactively to the date that he voluntarily ceased practicing law. We adopt the Board's recommendation and impose the three-year sanction effective as of January 10, 1997.

The Board's recommendation is based on stipulations in which respondent acknowledged having violated multiple provisions of the Code of Professional Responsibility on numerous occasions involving many different clients and cases. Most instances concerned neglect of client matters, such as failing to appear for scheduled court hearings, failing to timely file legal documents and memoranda, failing to follow client instructions, failing to keep clients abreast of developments in their cases, failing to respond to client telephone calls and written correspondence, and failing to timely forward client files to new attorneys. See DR 1-102(A)(5), (7) (engaging in conduct that is prejudicial to administration of justice or that adversely reflects on fitness to practice law); DR 6-101(A)(3) (neglecting legal matters).

The most serious incidents involved respondent (1) arranging the loan of an elderly client's funds to another client without adequately securing the loan or disclosing to the elderly client that the borrower was also his client; (2) reloaning those same funds, again without

informing the client or obtaining adequate security, to a corporate client for which he served as director; and (3) executing and signing the promissory note and mortgage deed nearly one and one-half years after the loan was made, but backdating the documents to the date of the loan. Based on these admissions, respondent acknowledged violating DR 5-101(A) (failing to disclose conflicting personal interest in legal matter), DR 5-105(C) (representing multiple clients without disclosing conflicting interests), and DR 9-102 (failing to handle client funds properly).

Following a one-day sanctions hearing in which numerous witnesses testified on respondent's behalf, a hearing panel recommended that respondent be disbarred. The parties then presented briefs and oral argument before the Board. In September 1996, two months after the Board hearing and approximately one week before the Board filed its original final report, respondent moved to reopen the matter so that he could share with the Board what he had recently learned through therapy and treatment about his personal problems and psychological condition during the period in which his transgressions had occurred. The Board informed respondent that he could decide if he still wanted to reopen the matter after reviewing its final report. In the final report, with the exception of one dissenting member, the Board declined to adopt the hearing panel's recommendation, but instead recommended that respondent be suspended from the practice of law for three years.

Respondent then renewed his motion to reopen, this time including a doctor's affidavit stating that respondent had displayed symptoms suggesting Attention Deficit Disorder (ADD) with depression, but that he seemed to have responded well to an antidepressant prescribed to reduce those symptoms. On January 10, 1997, the Board denied respondent's motion to reopen and filed a slightly revised final report. On appeal, respondent argues that (1) the Board abused its discretion by denying his motion to reopen; (2) the Board failed to give sufficient weight to several mitigating factors; (3) the Board exaggerated the number of violations and failed to distinguish between those committed before and after this Court disciplined him in 1994; (4) the recommended sanction was unduly harsh; (5) if this Court adopts the Board's recommended sanction, it should make the three-year suspension retroactive to the date he voluntarily ceased practicing law; and (6) the Board chair erred in denying his request that she and other Board members disqualify themselves from his case.

## I.

We first consider respondent's argument that the Board chair should have disqualified herself and certain other Board members from participating in his case. In May 1995, while representing Attorney Vincent Illuzzi in disciplinary proceedings before the Board, respondent filed suit in federal district court, claiming that four members of this Court and fourteen members of the Board had violated Illuzzi's constitutional rights. Soon thereafter, in his own disciplinary proceeding, respondent sought the recusal of the members of the Board whom he had sued on behalf of Illuzzi. The Board chair denied the motion.

We find no abuse of discretion. Indeed, although four members of this Court ultimately decided not to take part in the Illuzzi disciplinary action upon which the federal suit was based, we emphasized that recusal is not compelled merely because a litigant sues or threatens to sue a judge. *In re Illuzzi*, 164 Vt. 623, 624, 670 A.2d 1264, 1265 (1995) (mem.). Nor is there a per se lack of impartiality, requiring recusal, when a judge is the subject of a judicial conduct complaint by an attorney appearing before the judge. *Ball v. Melsur Corp.*, 161 Vt. 35, 39, 633 A.2d 705, 709 (1993) ("Otherwise, an attorney would need only file a complaint, possibly groundless, to avoid a particular judge thereafter."); see *State v. Putnam*, 164 Vt. 558, 561, 675 A.2d 422, 424 (1996) (rule of per se disqualification is generally inappropriate in circumstances where Code of Judicial Conduct does not require disqualification).

Given this law, we can hardly conclude that the members of the Board were required to disqualify themselves simply because respondent had sued them on behalf of a client. Nor is a different result compelled by the fact that the Board chair, who denied respondent's motion, was one of the Board members whom respondent had sued. Further, respondent's attempts to demonstrate actual prejudice by claiming that the hearing panel did not give adequate consideration to the testimony of his witnesses and other facets of his case fall far short of the required showing. See *Ball*, 161 Vt. at 40, 633 A.2d at 710 (party seeking judge's recusal must make clear and affirmative showing of bias or prejudice).

## II.

Respondent argues that the Board abused its discretion by refusing to reopen his case to hear new evidence on his mental

condition. We disagree. See *In re Twenty-Four Vermont Utilities*, 159 Vt. 339, 356, 618 A.2d 1295, 1305 (1992) (administrative agency has discretion whether to reopen evidence). In support of his motion to reopen, respondent offered an affidavit from a psychiatrist stating that respondent appeared to have "symptoms suggesting an Attention Deficit Disorder with depression." The doctor indicated that he had prescribed an antidepressant to counter these symptoms, and that respondent had made significant improvements in planning, organization and consistency. This latter statement in the affidavit appears to be based on respondent's and his wife's own reports of respondent's progress. According to the affidavit, respondent's wife reported that respondent was now taking responsibility for organizing his life, and respondent reported that he was no longer setting unrealistic deadlines for his work. The doctor concluded that (1) many of the behaviors that led to problems in respondent's practice seem to have been caused by ADD and depression; (2) respondent appears to be improving as the result of taking an antidepressant; and (3) he appears to be ready to return to the practice of law.

The proffered evidence in the affidavit added little of significance to the factors affecting the Board's recommended sanction. This is particularly true in light of the Board's concern that respondent's misconduct had devolved from neglect to unauthorized use of clients' funds, serious enough to "easily support a recommendation of disbarment." The Board already knew that respondent had mental problems that he hoped to address and overcome. Indeed, in its final report, the Board recognized respondent's acknowledgment that "he suffers from an addiction to work and an obsessive inability to place boundaries on his practice which is comparable to alcoholism," and that "this addictive behavior is a mental problem which has substantially affected his well being and jeopardized his career in the field of law." See *People v. Goldstein*, 887 P.2d 634, 642 (Colo. 1994) (although hearing board did not specifically mention attorney's emotional condition as mitigating factor, board's finding on condition indicated that it took condition into account in recommending sanction).

■ At the disciplinary proceedings, respondent claimed that the many instances in which he had neglected client matters occurred because he was unable to control and organize his practice. The doctor's affidavit similarly suggests that respondent's mental condition prevented him from consistently planning and organizing his caseload. The proffered evidence does not suggest, however, that ADD caused respondent to engage in the misconduct that the Board

considered most egregious. See *id.* at 641 (under ABA standards, mental condition may be considered as mitigating factor when medically documented condition caused misconduct, and respondent's recovery is demonstrated by meaningful and sustained period of rehabilitation that makes recurrence of the misconduct unlikely). The misconduct that "shock[ed] the conscience of the Board" was respondent's misappropriation of his client's money by loaning it to another client without the first client's authority. Whatever else this may have been, it was more than inattention to client needs caused by respondent's inability to limit his caseload.\* See *Oklahoma Bar Ass'n v. Busch*, 919 P.2d 1114, 1120 (Okla. 1996) (while attorney's neglectful behavior may have been influenced by ADD, his physician testified that ADD does not create inability to tell truth). As the Board concluded, respondent cannot defend his misappropriation of client funds by claiming that he has a disorganized law practice. See *Oklahoma Bar Ass'n v. Prather*, 925 P.2d 28, 30 (Okla. 1996) (ADD may not shield attorney from professional responsibility, although mental condition may be considered as mitigating factor where attorney's long-term commitment to treatment has brought illness under control).

## III.

We also reject respondent's arguments that (1) even on the evidence presented, the Board failed to give sufficient weight to his mental condition and other mitigating factors such as his lack of a selfish motive, cooperation and remorse, character and reputation, and pro bono work; (2) the Board exaggerated the number of violations and failed to distinguish ones committed after this Court last disciplined him in 1994; and (3) the recommended sanction was unduly harsh. The record reveals that the Board considered the positive aspects of respondent's practice and character, but concluded that they were far outweighed by the numerous aggravating factors present in this case. We concur.

---

\*The Board made no finding that respondent knowingly and intentionally converted client money in the "Alderbert matter." The Board's characterizaiton of respondent's conduct as "neglect" was pivotal in its decision to recommend suspension rather than disbarment. We take judicial notice that subsequent to oral argument in this matter respondent was indicted by a federal grand jury for alleged criminal conduct arising out of his legal representation of clients, including Ms. Alderbert. The sanctions we impose today do not foreclose any further disciplinary action that may be warranted under Administrative Order No. 9, Rules 14 and 15.

The overriding aggravating factor is respondent's prior disciplinary record. In 1990, respondent appeared before the Board to answer multiple complaints of ethical violations; eventually, this Court publicly reprimanded him for improperly communicating with jurors. *In re Hunter*, 157 Vt. 649, 595 A.2d 296 (1991) (mem.). In 1994, this Court again publicly reprimanded respondent and placed him on probation for nine months as the result of his continuing pattern of neglect to clients and his disregard for bar counsel's efforts to investigate the complaints against him. *In re Hunter*, 163 Vt. 599, 656 A.2d 203 (1994) (mem.).

Notwithstanding these earlier disciplinary proceedings and sanctions, respondent not only continued to commit similar ethical violations, but his inappropriate conduct escalated into violations of a more serious nature involving the mishandling of client funds. Further, regardless of the exact number of violations or how many occurred after a certain date, respondent concedes that some of these violations occurred after this Court sanctioned him a second time in December 1994. Even more violations occurred after disciplinary proceedings leading up to the December 1994 sanction had begun, at a time when respondent should have been on notice as to the impropriety of his conduct.

■ As respondent acknowledges, disciplinary sanctions are not intended to punish attorneys, but rather to protect the public from harm and to maintain confidence in our legal institutions by deterring future misconduct. Given these objectives, respondent's mental condition is not the dispositive factor in determining the appropriate sanction. See *In re Wysolmerski*, 167 Vt. 562, 702 A.2d 73 (1997) (mem.) (diagnosis of clinical depression would not alter conclusion that respondent should be suspended from practice of law for three years; whether respondent's extreme errors in judgment can be explained in terms of clinical depression or profound personal distress, Court must adhere to its goals of protecting public from misconduct and maintaining confidence in our legal institutions); *In re Sullivan*, 530 A.2d 1115, 1119 (Del. 1987) (since focus of disciplinary sanction is on protecting public, mental condition of attorney who posed danger to public was not mitigating factor).

■ Nor are we persuaded — as respondent would have us conclude — that the Board's "most serious mistake" in weighing mitigating factors was its evaluation of respondent's character and reputation witnesses. The Board acknowledged that a broad spec-

trum of witnesses testified regarding their personal opinions as to respondent's good character. But any mitigating effect that good character and reputation evidence might have on the Board's choice of sanction is necessarily diminished when, as here, the attorney has been previously disciplined. In light of respondent's continued and escalating pattern of misconduct notwithstanding prior sanctions against him, the Board's recommended three-year suspension is not excessive. See *In re Berk*, 157 Vt. 524, 527-28, 602 A.2d 946, 948 (1991) (although Supreme Court makes its own ultimate decision, Board's recommendations on sanctions are accorded deference); cf. *Wysolmerski*, 167 Vt. at 563, 702 A.2d at 75 (in light of respondent's multiple, serious violations of disciplinary rules, three-year suspension is appropriate); *In re Illuzzi*, 160 Vt. 474, 490, 632 A.2d 346, 354-55 (1993) (given respondent's numerous prior disciplinary offenses, suspension from practice is necessary).

## IV.

 Respondent requests that any suspension be made retroactive to January 17, 1996, the date that he voluntarily ceased practicing law. The Board made no recommendation on retroactivity, but bar counsel argues that the suspension should commence on the date of this decision. A number of factors inform our determination on this point. On the one hand, voluntary agreements to cease practicing law while a disciplinary hearing is pending can protect the public when other alternatives are not available. Cf. Administrative Order No. 9, Rule 15 (setting forth basis and procedure for interim suspension). There would be little incentive for an attorney faced with license suspension to enter into such agreements if the period of nonpractice were not considered in appropriate cases. Here, the parties stipulated that respondent had suspended his law practice by notice to this Court on January 17, 1996. See *Oklahoma Bar Ass'n v. Badger*, 912 P.2d 312, 316 (Okla. 1995) (suspension made retroactive to date parties filed stipulations agreeing, among other things, that respondent had voluntarily ceased practice of law). There is no suggestion that respondent has practiced law since the latter part of January 1996.

 On the other hand, because neither the Board nor this Court is in any position to monitor voluntary suspensions, which are not recognized by law, it is crucial that attorneys agreeing to suspensions fully comply with the rules for discontinuing a law practice. Respondent failed to comply with Administrative Order No. 9, Rule 21 in

discontinuing his practice, as he had agreed to do. He did not follow the formal notification procedures contained in that rule. Further, he failed to discontinue his practice on the day he agreed to do so, but instead did so a few days later shortly after bar counsel informed respondent's attorney that he knew respondent was still practicing law. Respondent also failed to comply with some of the probationary conditions imposed as part of his previous December 1994 disciplinary sanction. Considering all of the circumstances of this case, we impose the sanction retroactively from January 10, 1997, the date that the Board filed its revised final report and recommendation.

Finally, we note that irrespective of the retroactivity of the suspension, respondent may not be reinstated until he has demonstrated by clear and convincing evidence that (1) he has the moral qualifications, competency, and learning required for admission to practice law in this state; (2) the resumption of his practice will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive to the public interest; and (3) he has been rehabilitated. See Administrative Order No. 9, Rule 20(D).

*Respondent William A. Hunter is hereby suspended from the practice of law for a period of three years, effective as of January 10, 1997.*