## John Lucas v. Dr. Robert Hahn, Dr. Vincent Crockenberg, Stanley Carpenter, All of Johnson State College, Johnson, Vermont

[648 A.2d 839]

No. 94-015

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed July 15, 1994

Motion for Reargument Denied August 23, 1994

*John Lucas,* pro se, Morrisville, Plaintiff-Appellant.

*Michael J. Harris* and *Paul K. Sutherland* of *Sutherland & Collins, Inc., Burlington,* for Defendants-Appellees.

**Allen, C.J.** Plaintiff John Lucas appeals the summary judgment granted to defendants on claims arising from a decision by Johnson State College (JSC) not to recommend him for licensure as a teacher. We affirm.

Until the Spring of 1992, plaintiff was a graduate student enrolled in the education program at JSC, pursuing certification as a high school teacher. As part of the program, he was teaching a history class at Spaulding High School in Barre. A dispute over grades arose between plaintiff and his supervising teacher, and plaintiff, believing that the supervisor had wrongfully lowered many of his students' tentative grades, sent letters to that effect to the supervising teacher and the students involved.

On April 9, 1992, plaintiff met with three professors from the JSC education department to discuss the incident. Following this meeting, the department representatives informed him by letter of their finding that he had not adhered to policies outlined in JSC's Student Teaching Handbook 1991–92, which pertained to confidentiality and compliance with host-school regulations. They decided that plaintiff would not return to Spaulding, would not have further student teaching placements, and would not be recommended for licensure by JSC. The letter also notified plaintiff of the availability of an appeal to the Dean of Academic Affairs. Plaintiff appealed the decision to the education department, the graduate committee, the academic dean, and JSC's president, all of whom affirmed the decision to remove plaintiff from his position at Spaulding and the licensure aspect of the master's program. However, plaintiff was allowed to remain in the program to earn a master's degree in education.

In the course of his JSC appeals, plaintiff filed numerous requests for documents with the school, and JSC responded either with the requested documents, a request for clarification, or notification that the requested documents did not exist or were otherwise unavailable. Plaintiff continued to file requests, many of which JSC considered reformulations of earlier requests.

In March 1993, plaintiff commenced an action alleging violation of §§ 316 and 318 of Vermont's Access to Public Records Act, 1 V.S.A. §§ 315–320, requesting attorney fees and litigation costs pursuant to § 319(d), and penalties pursuant to § 320. Plaintiff further alleged that JSC failed to afford him due process in removing him from the teaching licensure program. Defendants successfully moved for summary judgment on both claims, and plaintiff appeals.

To prevail on a motion for summary judgment, the moving party must demonstrate both the absence of genuine issues of material fact

and entitlement to judgment as a matter of law. V.R.C.P. 56(c); *Murray v. White*, 155 Vt. 621, 628, 587 A.2d 975, 979 (1991). In determining whether an issue of material fact exists, the party opposing the motion receives the benefit of any reasonable doubts and inferences, *Pierce v. Riggs*, 149 Vt. 136, 139, 540 A.2d 655, 657 (1987), but allegations alone do not create issues of material fact. *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 266, 438 A.2d 373, 375 (1981).

## I.

Plaintiff first claims that he was denied due process in JSC's decision to remove him from the teacher licensure program. For the claim to be viable under the Fourteenth Amendment to the United States Constitution, plaintiff must demonstrate that removal from the licensing and student-teaching aspects of the masters program deprived him of a constitutionally protected "liberty" or "property" interest. *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82 (1978). "[P]roperty interests are creatures of state law," *id.* at 82; plaintiff's bare allegations of a contractual relationship between JSC and him do not suffice to establish such a property interest. Furthermore, we need not resolve whether he suffered harm to a liberty interest of constitutional dimension, because we conclude that plaintiff was afforded "at least as much due process as the Fourteenth Amendment requires." *Id.* at 85.

As a preliminary matter, plaintiff challenges the trial court's conclusion that the decision was based on academic performance. The record shows that plaintiff's handling of the grading disagreement prompted JSC's action, which was based on doubt about plaintiff's ability to adhere to ethical standards and to cooperate with superiors in the school setting. In the context of the licensure program these concerns are valid academic matters, because they rank as important measures of an individual's ability to perform as a teacher. See *Lipsett v. University of Puerto Rico*, 637 F. Supp. 789, 808 (D.P.R. 1986) (decision to cancel third-year surgery residency, based on conclusion that plaintiff would not make a good surgeon because of inability to follow program's line of authority and desire to do things her own way, was academic decision), *rev'd on other grounds*, 864 F.2d 881 (1st Cir. 1988); cf. *Horowitz*, 435 U.S. at 91 n.6 (in determining whether to dismiss a medical student on an academic basis, nonacademic factors such as personal hygiene and timeliness may be as important in

determining whether a student will make a good medical doctor). In the absence of evidence to the contrary, we agree with the trial court that plaintiff's removal from the licensure program was an academic decision.

■ ■ The procedures afforded plaintiff before and after the original decision conformed to due process requirements. By its nature, due process comprehends a wide range of procedural protections tailored to myriad situations of state action affecting protected interests. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). At a minimum, due process mandates that any procedural scheme provide an individual with notice and an opportunity to be heard. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). An academic dismissal calls for less stringent procedures than would be mandated for a disciplinary violation. *Horowitz*, 435 U.S. at 86. Formal, judicial-type hearings are inappropriate, because "the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Id.* at 90.

Plaintiff was given adequate predeprivation notice and an opportunity to be heard. He was clearly notified in advance of the reason for the hearing with the three education faculty members. Plaintiff does not dispute that he sent the letters to his supervising teacher and students; he used the informal meetings with JSC staff to explain his actions. Moreover, plaintiff does not contend that he was ignorant of the student-teacher program policies regarding confidentiality, respect for supervisors, and appropriate channels for airing disputes. Therefore, he received adequate notice of the nature of the proceedings and an opportunity to make his case to the individuals empowered to decide his case. JSC made available to plaintiff several levels of review before different members of the JSC faculty and administration, which included opportunities for plaintiff to present his case again. This array of procedures sufficed to minimize the risk of erroneous deprivation resulting from JSC's academic decision. Considering the academic nature of the decision, plaintiff was not denied due process of law.

## II.

Plaintiff's second claim alleges violations of the Access to Public Records Act. In May 1992, plaintiff made requests for documents at JSC concerning procedural and substantive due process accorded

graduate students, criteria for faculty imposition of sanctions on graduate students, and documents regarding the appeals process at JSC. Defendants responded with the Governance and Policy Manual Documents, the Graduate Catalogue (1988–1991), the JSC Catalogue (1991–1993), and the Student Teaching Handbook. Later that month, plaintiff requested copies of all correspondence between JSC and Spaulding High School concerning him, and all internal documentation relating to him and his career at JSC. JSC responded that plaintiff's file would be open to him for inspection, and explained that other documents requested either were being tracked down or did not exist. Between June 1992 and February 1993, plaintiff filed seven additional requests for documents, most of which repeated earlier requests submitted and responded to by JSC. From March 1 to April 2, 1993, plaintiff filed eighteen separate requests for documents, many repeating prior requests. JSC's attorney had notified plaintiff in a letter dated March 19, 1993, that many of his requests had exceeded the scope of the Public Records Act and that any legitimate requests had been acknowledged either with the document or an explanation that it did not exist or was beyond JSC's control.

■ Pursuant to 1 V.S.A. § 316(a), "[a]ny person may inspect or copy any public record or document of a public agency . . . ." The custodian of the public record must "promptly produce the record for inspection," unless the record is exempt from production or does not exist. *Id.* § 318(a)(2), (4). The trial court concluded that JSC had complied with plaintiff's requests, and the evidence supports that conclusion. The record shows that JSC attempted to meet plaintiff's reasonable requests in good faith. Defendants provided plaintiff with full access to his academic files at the JSC Education Department, and either supplied other documents requested or explained why they would not be produced. We have reviewed the document requests independently, and conclude that JSC discharged its obligations under the Public Records Act. Plaintiff suggests a conspiracy to keep relevant information from him, but offers nothing more than allegations to support his theory. This does not suffice to establish a genuine issue of material fact, and, on the facts adduced, defendants are entitled to judgment as a matter of law.

*Affirmed.*