## State of Vermont v. Joseph Mitchell Mott

## Joanne E. Mott (Lewis) v. Joseph Mitchell Mott

[692 A.2d 360]

Nos. 95-433 & 96-023

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 10, 1997

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee in No. 95-433.

*Robert Appel*, Defender General, and *Anna Saxman*, Appellate Defender, Montpelier, for Defendant-Appellant in Nos. 95-433 and 96-023.

*Lila Shapero*, Vermont Legal Aid, Burlington, for Amicus Curiae Vermont Network Against Domestic Violence and Sexual Assault.

**Dooley, J.** Defendant Joseph Mott appeals his district court conviction for violating an abuse prevention order, see 13 V.S.A. § 1030, and separately appeals from the family court's denial of his motion for relief from the same abuse prevention order. Defendant contends that the order, issued to his ex-wife pursuant to 15 V.S.A. §§ 1103 and 1104, was void because he had no opportunity to be heard and the court failed to make any findings in support of the order; and that he can raise these defects in defense of the criminal charge. In

the criminal case, he also argues that the district court erred (1) in. failing to instruct the jury that specific criminal intent was required for the crime; (2) in failing to instruct an element of the offense; and (3) in refusing to recognize an implied exception to the offense for the administration of justice. We affirm both the conviction and the refusal to reopen the order.

Defendant and his ex-wife divorced in 1990, and, prior to the 1994 abuse prevention order at issue, have been involved in extensive proceedings in the family court, centered on defendant's visitation rights to the three minor children of the parties. The divorce order gave defendant the right of visitation "at reasonable times and places," but gave his wife the right to require the presence of an adult supervisor at defendant's visitation. Apparently, defendant did not seek to exercise his visitation rights until he was imprisoned for property crimes in 1992. Defendant's attempts to exercise visitation at the prison, over the wife's objections, led to a series of orders, including a June 1994 order terminating defendant's visitation rights. Visitation was allowed again on May 22, 1995 when defendant was released on parole, but was terminated on December 4, 1995 after defendant's parole was revoked.

The court also issued a series of abuse prevention orders against defendant. In 1992, defendant's ex-wife alleged that defendant was telephoning her and threatening physical violence upon his release from prison. The court issued an order forbidding telephone contact and communication of threats by any means. At the expiration of the 1992 order, defendant's ex-wife sought a new order based on the history of threats and violence and the expected release of defendant from prison. The court issued another order, but it expired at the end of October 1993.

The ex-wife sought the order at issue in these cases in August 1994, while defendant was incarcerated at the Chittenden County Correctional Facility, alleging that defendant would attempt to approach her upon his release. The emergency order, issued on August 15, 1994, forbade phone contact and mail contact and ordered defendant to stay 100 feet away from his ex-wife. Defendant was served with the order in jail.

On August 24, 1994, the family court held a required hearing on whether to extend or modify the emergency order. Defendant was also served with notice of this hearing. Defendant did not appear in family court to resist extension of the emergency order, and the court entered a final year-long abuse prevention order containing the same

terms as the emergency order. Defendant was served with the final order in jail.

On November 8, 1994, defendant sent his ex-wife a letter, requesting a Christmas visit with his children. She turned it over, unopened, to the police, and defendant was subsequently charged, pursuant to 13 V.S.A. § 1030, with violating the abuse prevention order's no-mail-contact provision.

In March 1995, defendant moved in family court to strike the order on the ground that it was void for lack of jurisdiction because defendant had been denied due process by the state when he was not transported to the hearing on extension of the emergency order. Defendant moved to dismiss the district court criminal case on the same ground. Both motions were denied.

Defendant was convicted of violating the abuse prevention order, pursuant to 13 V.S.A. § 1030. After the trial, he filed a motion to acquit and for a new trial, making some of the arguments he makes to this Court. This motion was denied after a hearing on August 9, 1995.

## I. The Criminal Case

### A.

Although defendant argues that the criminal conviction should be overturned for several reasons, his main argument is that the abuse prevention order was void because it was issued in violation of defendant's procedural due process rights. Defendant claims that the family court lacked jurisdiction over him because he was incarcerated and was denied an opportunity to attend the hearing where the final order was issued.

Defendant's argument hinges on the fact that he had been provided transportation from prison to eight previous family court hearings without an affirmative request on his part. He argues that he had a reasonable expectation that the family court and prison officials would transport him to family court hearings, whether or not he requested transportation. Because he relied on the state's previous course of action, defendant argues that the state created an expectation of transportation, and then denied him the opportunity for a hearing by changing its policies without telling him.

We do not generally allow a person who is under a court order to challenge it by violating it. See *State v. Carlson*, 133 Vt. 562, 564, 349 A.2d 237, 238 (1975). Moreover, defendant's arguments involve a

collateral attack on the abuse prevention order. Although collateral attacks are generally prohibited, defendant seeks to fit within a limited exception to the prohibition authorized in *State v. Putnam*, 137 Vt. 410, 413, 407 A.2d 161, 163 (1979). The defendant in *Putnam* was charged with operating a motor vehicle after his license to operate was suspended, and he attempted to defend by challenging the legality of the suspension. We allowed a limited defense, with the following explanation:

> We recognize the cogency of the State's argument that litigation must cease sometime, and that there is a strong public policy favoring resistance of the license suspension when it is imposed, not later. But, on the opposite side of the scale, there is also force to the defendant's argument that he should not be bound, in any proceeding, by a suspension levied without constitutionally adequate notice, or without subject matter jurisdiction. Although the doctrines of res judicata and collateral estoppel are not strictly applicable, because of the different burden of proof in criminal prosecutions and license suspensions, they furnish excellent analogy. We accordingly hold that, consistent with [*State v.*] *Cady*, in a prosecution for driving with license suspended, collateral attack upon the suspension is permissible for, and limited to, questions of jurisdiction over the defendant and the subject matter in the original suspension proceedings.

*Id.* (citations omitted). Defendant argues primarily that the abuse prevention order was issued without an opportunity for him to be heard and, therefore, in violation of his due process rights. He asserts that *Putnam* allows this kind of collateral attack in the criminal proceeding based on his violation of the order.

■ We agree that the *Putnam* standard applies to allow the defense that the abuse prevention order was issued in violation of defendant's due process rights. We are not convinced, however, that defendant has shown a violation of due process.

Due process of law in this circumstance requires that defendant receive notice and an opportunity to be heard. See *Lucas v. Hahn*, 162 Vt. 456, 459, 648 A.2d 839, 842 (1994). It is undisputed that defendant received notice of the abuse prevention hearing. The question is whether he had an opportunity to be heard.

■ We agree that preventing defendant from any meaningful access to the abuse prevention proceeding would be a denial of due

process. See *Whitney v. Buckner*, 734 P.2d 485, 488 (Wash. 1987). Meaningful access does not, however, necessarily mean a personal appearance in the family court. See *In re C.G.*, 885 P.2d 355, 357 (Colo. Ct. App. 1994); *Sullivan v. Shaw*, 650 A.2d 882, 884-85 (Pa. Super. Ct. 1994); *Whitney*, 734 P.2d at 490; *State ex rel. Taylor v. Dorsey*, 914 P.2d 773, 777 (Wash. Ct. App. 1996). Depending on the case, an incarcerated litigant might obtain meaningful access through a telephone connection to the courtroom, see *Tageant v. Tageant*, 909 P.2d 322, 323 (Wyo. 1996); through counsel, see *In re C.G.*, 885 P.2d at 357; or possibly through written communications with the court, see *Sullivan v. Shaw*, 650 A.2d at 885. None of the alternatives were explored here because defendant never made a request for access.

Even if this were a case where only a personal appearance would comport with due process, we are unable to find a denial of due process on this sparse record. The only evidence on which defendant relies is the testimony of a family court clerk that defendant had been transported to family court proceedings in the past and no requests for transport were in the files. From this evidence, defendant argues that he relied on the past transport policy and failed to attend the abuse prevention hearing because he was not transported. There is, however, no evidence to support this argument. Defendant never testified, and, thus, there is no evidence of reliance and no evidence that defendant would have attended the hearing had he been transported. His claim of reliance is undermined by his failure to contest the order until, many months after the order's issuance, he was criminally charged with violating it. As a result, the district court found that defendant did not intend to attend the abuse prevention hearing and concluded that defendant's position was not "factually credible." Defendant had the due process right to "choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The record is silent on what choice he actually made.

We also have no indication of what position defendant would have taken at the hearing to prevent imposition of the order. See *Sullivan v. Shaw*, 650 A.2d at 885. Specifically, there is no indication that he would have opposed restrictions on contacting plaintiff by mail. All his actions up to that point had been aimed at obtaining an order that authorized visitation with his children.

Due process claims must be resolved on the facts before the court, and we must look to whether the individual asserting a denial of due process can show prejudice from the asserted denial. See *Rutz v.*

*Essex Junction Prudential Comm.*, 142 Vt. 400, 407, 409, 457 A.2d 1368, 1371-72 (1983) (no violation of due process where student was not prejudiced by lack of written notice). Defendant had the responsibility to bring his inability to obtain access to the abuse prevention proceeding to the attention of the family court, and he failed to do so. See *Pella Products v. Krutak*, 150 Vt. 81, 82-83, 549 A.2d 1059, 1061 (1988) (party could not raise due process challenge based on inability to hear proceedings in trial court where he never advised trial judge that he was unable to hear). We find no denial of due process.

██ Defendant also claims that the abuse prevention order was void because (1) without statutory authorization, the emergency temporary order prohibited mail contact; (2) the abuse prevention order was issued without findings of fact; and (3) no evidence was taken on which to issue the abuse prevention order. We decline to reach the first claim.[1] Defendant was charged with violating the August 24th final abuse prevention order and not the August 14th emergency temporary order. There is explicit statutory authority for the family court to impose restrictions on mail contact in a final abuse prevention order. See 15 V.S.A. § 1103(c)(1). We recognize that the final order contained the same restriction as was imposed in the temporary order, but this does not undercut the validity of the final order.

██ We also decline to reach whether either of the other challenges is meritorious. Even if the statute requires findings of fact as defendant argues, see 15 V.S.A. § 1103(c), (h), the failure to make the findings does not rise to the level of a jurisdictional defect as required by *Putnam*. Similarly, the court's procedure, treating the judgment as one issued by default based on the ex-spouse's earlier affidavit, cannot be said to involve a jurisdictional defect, assuming there was any error at all.

██ Defendant's final attack on the order argues that the no contact provision denies his First Amendment right to free speech and interferes with his fundamental right to seek parent-child contact. Defendant has no First Amendment right to inflict unwanted and harassing contact on another person. See *Rzeszutek v. Beck*, 649 N.E.2d 673, 680-81 (Ind. Ct. App. 1995); *Gilbert v. State*, 765 P.2d 1208,

---

[1] We acknowledge the helpful amicus curiae brief of the Vermont Network Against Domestic Violence and Sexual Assault as well as the thorough briefing of the parties, but do not reach the merits of the argument.

1210 (Okla. Crim. App. 1988); cf. *Rowan v. United States Post Office*, 397 U.S. 728, 738 (1970) (statutory prohibition on person using mail to send unwanted information is valid; "[i]f this prohibition operates to impede the flow of even valid ideas, the answer is that no one has a right to press even 'good' ideas on an unwilling recipient"). Nor is the prohibition overbroad because it involves communication. See *People v. Blackwood*, 476 N.E.2d 742, 746 (Ill. App. Ct. 1985); *State v. Hauge*, 547 N.W.2d 173, 175-76 (S.D. 1996). We do not agree that the prohibition prevents defendant from petitioning the court to reestablish parent-child contact. Defendant contacted his ex-spouse using a communication means she found harassing, and attempted to convince her to bring the children to the prison, despite her continuous longstanding opposition to such contact. His actions can hardly be considered protected conduct.

In summary, we hold that the abuse prevention order was not unconstitutional and was not issued in violation of defendant's due process rights. Any other procedural defect cannot be raised by collateral attack.

## B.

Next, defendant argues that the jury instructions were erroneous because they failed to charge that mens rea is a necessary element of the offense.[2] The statute provides that "[a] person who commits an act prohibited by a court . . . in violation of an abuse prevention order . . . after the person has been served notice of the contents of the order" commits a crime and is subject to fines or imprisonment. 13 V.S.A. § 1030(a). The court charged that the statute involved intent and knowledge elements as follows:

> The intent element in this case, you will use the term as knowing. We will always use the term as knowing, which would mean that Mr. Mott understood he was contacting Ms. Lewis by mail. This wasn't a mistake, an accident, a misun-

---

[2] Defendant's counsel objected below to the intent instruction as follows: "I object to the court's intent instruction and request that the court give an appropriate instruction and suggest [my proposed instruction] is one but not perhaps the exclusive one as to what the intent is." The State argues that this objection is inadequate to preserve the issue because it does not state "distinctly the matter to which he objects and the grounds of his objection," as required by V.R.Cr.P. 30. We note that the request to charge was itself vague and general. We agree that the objection does not meet the requirements of Rule 30, but in the exercise of our discretion we have reviewed the merits of defendant's argument.

derstanding. That it was a deliberate act. He was contacting her by mail. He knew he was doing that.

And second, that he had knowledge of the order when he did it. Now, once we get to the order, the State has to prove the fact of the order. Was there really an order? They have to prove the contents of the order. What did the order say? They have to prove that the Defendant knew of the existence of the order. Had actual knowledge of it.

Although defendant characterizes the charge as lacking in a mens rea element, his real argument is that the mens rea description was inadequate. The charge required that the jury find that defendant intended to send the letter and that defendant had actual knowledge of the order. Defendant contends that the charge should have gone further and required the jury to find that defendant intended to violate the order.

Especially where a crime does not have a common-law antecedent, the determination of the requisite intent is first a question of statutory construction. See *State v. Roy*, 151 Vt. 17, 25, 557 A.2d 884, 889 (1989) (no scienter element in crime of eluding police officer when statutory language cuts against it). Moreover, the "starting point in the search for the mental element required for conviction of any particular crime is the intent to do the deed which constitutes the actus reus of that offense." R. Perkins, Criminal Law 661 (1957). In this case, the "deed" was the sending of the letter.

The language of the statute is entirely consistent with this starting point. The statute requires that defendant "commit[] an act prohibited by a court," that the act be "in violation of an abuse prevention order," and that the act occur after defendant "has been served notice of the contents of the order." 13 V.S.A. § 1030(a). Nothing in the language suggests that defendant must have intended to violate the order or even that defendant must have known that the conduct would violate the order. Consistent with the Legislature's intent that it is defendant's responsibility to read the order and determine what conduct is prohibited, the Legislature provided that any order warn, in bold capital letters, that "VIOLATION OF THIS ORDER IS A CRIME SUBJECT TO A TERM OF IMPRISONMENT OR A FINE, OR BOTH . . . ." 15 V.S.A. § 1103(i).

The purpose of the Abuse Prevention Law is to provide "inexpensive and uncomplicated proceedings that allow an abused family member to obtain immediate relief." *Rapp v. Dimino*, 162 Vt.

1, 4, 643 A.2d 835, 837 (1993). We would not implement that purpose by holding that an abuser can escape criminal liability for violation of an order by refusing to read it and remaining unaware of its terms. We believe that we can enforce the statute only by holding that defendant has the responsibility to read and understand the order and conform his conduct to it. We hold that the trial court correctly charged on the mens rea element of the crime of violation of the abuse prevention order.

## C.

■ Defendant makes two final claims, which we dispose of summarily. First, he claims that the trial court erred in failing to submit to the jury the issue of the validity of the order. The statute does not make the validity of the order an element of the offense. See 13 V.S.A. § 1030(a). Thus, the validity of the order is a legal issue for resolution by the trial court and not by the jury. See *State v. Pike*, 143 Vt. 283, 289, 465 A.2d 1348, 1351 (1983).

Next, defendant argues that the letter fit within an implied exception to the prohibition for "settlement or other legal negotiations." We need not consider whether there is an implied exception to the prohibition because this letter would not fit into such an exception. Defendant's visitation rights had been terminated in June, and there was nothing before the court. The letter did not seek any action with respect to court proceedings. We cannot characterize the letter as an offer of settlement or as part of a legal negotiation.

## II. The Civil Case

After the criminal case was commenced, defendant moved in the family court to strike the abuse prevention action, asserting that the denial of "fundamental constitutional" rights to a hearing voided the final order. The motion was denied without hearing. On appeal, defendant argues that the motion was really one to reopen or set aside a judgment under V.R.C.P. 60(b), and the court should not have ruled on it without a hearing. Further, he argues that the motion should have been granted under the policy of liberally reopening default judgments. But see *Donley v. Donley*, 165 Vt. 619, 619-20, 686 A.2d 943, 945 (1996) (not permissible to use Rule 60(b) to remedy failure to appeal abuse-prevention order).

■ Defendant's real point in these arguments is to have the order set aside so that it could not serve as a basis of the criminal conviction. As we have discussed above, however, defendant is not

entitled to challenge the order by violating it. We have ruled that defendant had no valid jurisdictional defense that could be raised by collateral attack. Even if we were to rule that the abuse prevention action should have been stricken because of procedural errors in its formulation, or that the order should be reopened under Rule 60(b), this action would have no impact on defendant's criminal conviction.

The family court order has long since expired of its own terms. A case becomes moot when the issues presented are no longer live and the parties lack a legally cognizable interest in the outcome. See *Doria v. University of Vermont*, 156 Vt. 114, 117, 589 A.2d 317, 319 (1991). Since the abuse prevention order being challenged is no longer in effect, and the relief requested would not help defendant in his challenge to his criminal conviction, we conclude that this controversy is moot.

*Affirmed.*