# State of Vermont v. Carl L. Dann

# State of Vermont v. Albert Wurzberger

[702 A.2d 105]

Nos. 96-178 & 96-179

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 8, 1997

Motion for Reargument Denied September 10, 1997

120

*James Maxwell,* Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Herbert G. Ogden, Jr.* of *Harlow Liccardi & Crawford, P.C.,* and *Karen Abatiell Kalter,* Rutland, for Defendants-Appellants.

**Dooley, J.** Defendants appeal related convictions for the sale and possession of fireworks in violation of 20 V.S.A. § 3132(a). Defendant Albert Wurzberger was the owner and operator of the 1836 Country Store in Wilmington. The State charged that defendant Wurzberger sold fireworks and that defendant Carl Dann possessed fireworks. Defendants argue that the trial court erred (1) in declining to apply claim preclusion to Wurzberger's case, (2) in declining to apply issue preclusion to either case, (3) in upholding the fireworks statute against a void-for-vagueness claim, (4) in improperly instructing the jury on mens rea, (5) in refusing to disqualify Judge DiMauro, and (6) in denying as untimely Wurzberger's motions to dismiss on the grounds of selective prosecution and contractual bar to prosecution. We affirm.

On two prior occasions, in 1987 and 1992, the State had unsuccessfully attempted to prosecute defendant Wurzberger for the sale of fireworks. In 1987, the State obtained a search warrant to seize fireworks from Wurzberger's store. After the warrant was executed, Wurzburger moved for return of the property. The district court held that 20 V.S.A. § 3131, which defines "fireworks," was unconstitutionally vague as applied to Wurzberger and ordered the State to return the items seized under the warrant. The State decided not to press charges against Wurzberger, and Wurzberger later alleged that the State agreed not to prosecute him for selling identical fireworks any time in the future.

In 1992, the State obtained another search warrant to seize fireworks from Wurzberger's store, and subsequently charged him with violating 20 V.S.A. § 3132(a), which prohibits the sale "at retail or wholesale" of fireworks, unless within specified exceptions. Holding that the fireworks statute was overbroad, the trial court again

ordered the return of the items seized from Wurzberger's store. The State sought permission to appeal the order in both the trial court and in this Court, and was denied. Thereafter, the court dismissed the criminal case against Wurzberger.

The current appeals stem from two separate incidents in 1994. On May 2, 1994, Chief Thomas Donnelly of the Wilmington Police Department went to defendant Wurzberger's store and purchased various items including "Mystical Night Fireworks," "Flight of the Phoenix Fireworks," and "Big Bear Fireworks." Officer Donnelly also purchased items labelled as sparklers, and an unlabelled item that he believed to be a sparkler. Wurzberger was thereafter charged with selling fireworks.[1] On November 17, 1994, in the related case of defendant Dann, several officers went to Dann's apartment to execute a search warrant. They seized various items from Dann's living room that they believed to be fireworks, and Dann was subsequently charged with possession of fireworks.

Dann's trial took place on December 6, 1995, followed the next day by Wurzberger's trial. Judge Theresa DiMauro presided over pretrial matters in both cases, and over the trial in Dann's case. Because of scheduling conflicts, Judge John Wesley presided over Wurzberger's trial. Both defendants were convicted by jury, and this consolidated appeal followed.

## I.

Defendant Wurzberger's first claim of error is that his prosecution was barred by the doctrine of claim preclusion because a final judgment was issued in his favor in 1987 and 1992, and the prior cases involved the same parties, subject matter and causes of action. In prior cases, we have distinguished between claim preclusion, which is also called res judicata, and issue preclusion, sometimes referred to as collateral estoppel. See, e.g., *Longariello v. Windham Southwest Supervisory Union*, 165 Vt. 573, 574, 679 A.2d 337, 338 (1996); *Cold Springs Farm Dev. v. Ball*, 163 Vt. 466, 468, 661 A.2d 89, 91 (1995). Defendant Wurzberger raises the defense of claim preclusion, and both defendants raise issue preclusion. We turn first to claim preclusion.

■■ Claim preclusion will bar a subsequent action only if the court issued a final judgment in the previous action, and "the parties,

---

[1] Defendant was also charged with offering fireworks for sale on December 9, 1994, when a police investigator observed fireworks for sale at the store. This count was dismissed and is not involved in this appeal.

subject matter and causes of action are identical or substantially identical." *Berisha v. Hardy*, 144 Vt. 136, 138, 474 A.2d 90, 91 (1984). "Claim preclusion bars litigation of claims or causes of action which were or might properly have been litigated in a previous action." *Cold Springs Farm Dev.*, 163 Vt. at 472, 661 A.2d at 93. For the purposes of claim preclusion, two causes of action are the same if they can be supported by the same evidence. See *Hill v. Grandey*, 132 Vt. 460, 463, 321 A.2d 28, 31 (1974); see also *Stratton v. Steele*, 144 Vt. 31, 35, 472 A.2d 1237, 1239 (1984) (adopting logical relationship test). The doctrine of claim preclusion promotes judicial economy by requiring litigants to aggregate claims and compulsory counterclaims; its purpose is to protect courts and parties from the burdens of relitigation. *Russell v. Atkins*, 165 Vt. 176, 179, 679 A.2d 333, 335 (1996).

We have not conclusively decided whether claim preclusion, a concept more commonly raised in civil litigation, pertains to criminal proceedings. In several early cases, the United States Supreme Court held that the broader doctrine of "res judicata" applied to criminal as well as civil cases. See *Sealfon v. United States*, 332 U.S. 575, 580 (1948) (acquittal in conspiracy trial was res judicata as to essential facts in second prosecution); *United States v. Oppenheimer*, 242 U.S. 85, 87-88 (1916) (judgment dismissing indictment on ground that prosecution was barred by statute of limitations was res judicata as to second indictment for same offense). Since *Sealfon* and *Oppenheimer* were decided, however, courts have clarified what is meant by the term "res judicata," and have differentiated between claim preclusion and issue preclusion. Focusing on this distinction, the term "res judicata" as used in *Sealfon* and *Oppenheimer* is more accurately characterized as issue preclusion. Even if we held that claim preclusion applies to criminal cases, an issue we do not reach, we would conclude that claim preclusion does not bar prosecution of defendant Wurzberger.

■ The action against defendant Wurzberger is not barred by claim preclusion because, although the parties and causes of action may have been the same in 1987, 1992, and 1994, the subject matter is not. Wurzberger is charged with a crime, the sale of fireworks, that is capable of frequent repetition. Each event is separate, however, and gives rise to separate liability. See *Turner v. Bragg*, 118 Vt. 43, 45-46, 100 A.2d 431, 432 (1953) (since each instance of trespass is separate, former judgment covering trespasses up to certain date is not res judicata with respect to later trespasses).

In similar cases involving double jeopardy claims, we have held that each alleged act is a separate matter. See *State v. Ramsay*, 146 Vt. 70, 74, 499 A.2d 15, 18 (1985) (although alleged assaults by defendant on wife occurred on consecutive days, different dates and acts were involved); *State v. Pianfetti*, 79 Vt. 236, 246, 65 A. 84, 86 (1906) (where defendant was charged with selling illegal liquor on numerous occasions, defendant must show that prior convictions concerned *same* act to sustain plea of autrefois convict). Other courts considering claims of res judicata or collateral estoppel are in accord. See, e.g., *State v. Ell-Gee, Inc.*, 255 So. 2d 542, 545 (Fla. Dist. Ct. App. 1971) (each performance of play constitutes separate act); *Village of Northbrook v. Cannon*, 377 N.E.2d 1208, 1213 (Ill. App. Ct. 1978) (prior acquittals of alleged dog-ordinance violations are not res judicata because not same matter). In addition, the purpose of claim preclusion — to encourage parties to aggregate related claims arising from the same transaction or event — would not be served in this case because the State could not rationally aggregate claims arising from acts separated by years. Since there is no identity of subject matter in the 1987, 1992 and 1994 proceedings, the trial court properly declined to apply claim preclusion to defendant Wurzberger.

## II.

■ The second claim of error, raised by both defendants, is that the court was bound by its 1987 and 1992 rulings under the doctrine of issue preclusion. Collateral estoppel, or issue preclusion, is a constitutional right embodied in the Fifth Amendment guarantee against double jeopardy, *Ashe v. Swenson*, 397 U.S. 436, 445 (1970), and there is no question that it applies to criminal cases. See *In re Smith*, 146 Vt. 43, 45, 498 A.2d 497, 499 (1985). Defendants contend that, since the court previously held the fireworks statute unconstitutional, the issue cannot be relitigated.

The elements of issue preclusion are:

> "(1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair."

*State v. Stearns*, 159 Vt. 266, 268, 617 A.2d 140, 141 (1992) (quoting *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990)). Although the State contests this conclusion, we can

assume for purposes of analysis that the first three elements are met. The party against whom preclusion is asserted, the State, is the same in all cases; the decisions relating to the constitutionality of the statute were final judgments on the merits, compare *Washington v. United States*, 366 A.2d 457, 459 (D.C. 1976) (dismissal of indictment for failure to charge all elements is not judgment on merits); and defendants raise the same issue here — the constitutionality of the fireworks statute — as was raised by defendant Wurzberger in 1987 and 1992.

■■ We hold, however, that the State did not have a "full and fair" opportunity to litigate the constitutionality of the statute in prior proceedings, and that application of issue preclusion to these proceedings would not serve the interests of justice. In deciding whether these two elements are met, the court must look at the circumstances of each case. *Trepanier*, 155 Vt. at 265, 583 A.2d at 587. Among the factors to consider are: "the type of issue preclusion [offensive or defensive], the choice of forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens employed in each action, the procedural opportunities available in each forum, and the existence of inconsistent determinations of the same issue in separate prior cases." *Id.* (footnotes omitted).

First, the State's limited ability to appeal misdemeanor cases denied the State a full and fair opportunity to litigate the constitutionality of the fireworks statute. The State may not appeal final rulings in misdemeanor cases, see 13 V.S.A. § 7403(a), (b); *State v. Saari*, 152 Vt. 510, 513, 568 A.2d 344, 346-47 (1989), and must obtain permission to appeal interlocutory orders. *Saari*, 152 Vt. at 513, 568 A.2d at 347; V.R.A.P. 5 and 5.1. Here, the State requested permission in 1992 from both the trial court and, when permission was denied, from this Court, to appeal the order requiring the State to return the items seized from Wurzberger's store. Both the trial court and this Court denied the State's requests to appeal. Defendants suggest that the State could have asked for a delay in the entry of final judgment so that it could have requested permission to appeal a second time, see *State v. Felch*, 92 Vt. 477, 489, 105 A. 23, 28 (1918), or could have filed a petition for extraordinary relief. See V.R.A.P. 21; *Saari*, 152 Vt. at 514-15, 568 A.2d at 347 (granting petition for extraordinary relief where sentencing of misdemeanor conviction was at issue). The procedures urged by defendants again request a favorable exercise of discretion. We do not believe the State must repetitively request such

action. We believe the State made adequate efforts to appeal and litigate this issue, and was denied that opportunity.

Second, we doubt whether issue preclusion should apply to misdemeanor cases at all. The State's incentive to litigate misdemeanor cases is finite, especially when balanced against its scarce resources and overriding interest in prosecuting felonies. See generally A. Vestal and J. Coughenour, *Preclusion/Res Judicata Variables: Criminal Prosecutions*, 19 Vand. L. Rev. 683, 688 (1966). Along these lines, we have previously held that a civil license-suspension proceeding does not collaterally estop the State from relitigating the same issues in a criminal proceeding, given the State's minimal incentive to litigate issues in a civil suspension proceeding. *Stearns*, 159 Vt. at 271-72, 617 A.2d at 143.

Third, we do not believe it would serve the interests of justice to apply issue preclusion to these proceedings. The constitutionality of the fireworks statute would remain an elusive issue if we continually applied the doctrine of issue preclusion to unappealable orders of the trial court. This inability to obtain a definitive ruling would not be fair to the State. See *American Trucking Ass'ns v. Conway*, 152 Vt. 363, 371, 566 A.2d 1323, 1328 (1989) (allowing potentially unconstitutional statute to stay in effect because of res judicata would needlessly exalt form over substance); Restatement (Second) of Judgments § 28(5) (1982) (public policy exception to issue preclusion). We therefore turn to the merits of the appeal.

## III.

The third claim of error is that the definition of fireworks contained in 20 V.S.A. § 3131 and referred to in § 3132(a) is unconstitutionally vague. Due process requires that criminal statutes define proscribed conduct with sufficient specificity as to provide fair warning to potential offenders and to avoid arbitrary and discriminatory enforcement. See *Benning v. State*, 161 Vt. 472, 483, 641 A.2d 757, 763 (1994). When First Amendment interests are not involved, a defendant may not challenge a statute's application to others. See *State v. Cantrell*, 151 Vt. 130, 133, 558 A.2d 639, 641 (1989). Rather, the statute must be examined as applied to the defendant and the circumstances before the court. See *id.* Defendants concede that their First Amendment rights are not implicated in this case. We therefore analyze their void-for-vagueness claim in the light of the facts presented. See *id.*; *Benning*, 161 Vt. at 483, 641 A.2d at 763.

Section 3131 provides the following definition of "fireworks":

The term "fireworks" shall mean and include *any combustible or explosive composition,* or any substance or combination of substances, or article *prepared for the purpose of producing a visible or an audible effect by combustion, explosion, deflagration or detonation,* and shall include blank cartridges, toy pistols, toy cannons, toy canes, or toy guns in which explosives are used, the type of balloons which require fire underneath to propel the same, firecrackers, torpedoes, sky rockets, Roman candles, Daygo bombs, sparklers or other fireworks of like construction and any fireworks containing any explosive or flammable compound, or any tablets or other device containing any explosive substance, except that the term "fireworks" shall not include toy pistols, toy canes, toy guns, or other devices in which paper caps containing twenty-five hundredths grains or less of explosive compound are used, providing they are so constructed that the hand cannot come in contact with the cap when in place for use, and toy pistol paper caps which contain less than twenty-hundredths grains of explosive mixture, the sale and use of which shall be permitted at all times. . . .

20 V.S.A. § 3131 (emphasis added).

Defendant Wurzberger was charged with selling, and defendant Dann with possessing, fireworks as defined in 20 V.S.A. § 3131. At defendant Wurzberger's trial, Chief Donnelly testified that he bought seven items at defendant's store on May 2, 1994. The largest of the items was a package labelled "Mystical Night Fireworks," inside of which were smaller packages labelled "Jade Flowers," "Chinese Fireworks," and "Tiger's Roaring Fountain." Chief Donnelly indicated that he also bought a package labelled "Flight of the Phoenix Fireworks," a package labelled "Big Bear Fireworks," and a thirty-six-inch metal sparkler. The majority of the items were marked as either registered fireworks or Class C fireworks. The next day Officer Donnelly ignited some of the items at the Brattleboro Firearm Range to verify that the items were fireworks as labelled.

At Dann's trial, a police officer testified that he and two other officers executed a search warrant of Dann's apartment on November 17, 1994. The police seized twenty-seven different packages of alleged fireworks. The items had identifying labels with names ranging from "Tiger Fury," "Jumble 20 Rocket Fountains," and "Flower Gardens" to "Glory Torch," "Peach Flower" and "Blue Star." The majority of

the items were marked as consumer fireworks, had fuses on top, and had warning labels that said, "Emits shower of sparks."

Most of defendants' arguments involve the poor drafting of § 3131. For example, defendants note that "a sparkler may be anything from a diamond ring to a carbonated wine drink." They argue that the term "firecracker" is vague because it does not specify the explosive power necessary to qualify for the term. Further, they argue that labels are unreliable because the terms involved are commonly used on labels of items that are not explosive devices. In general, these arguments ignore the fact that a void-for-vagueness claim that does not implicate the First Amendment must be analyzed in light of the facts presented. Thus, it is not relevant to our analysis that the term "sparkler" can be applied to an item that does not involve a "combustible or explosive composition," that other items can be labelled as fireworks or firecrackers, or that items of insignificant explosive power come within the statutory definition.

■ We have no difficulty concluding that a person of ordinary intelligence would know that the items sold by Wurzberger and seized from Dann were "fireworks" within the meaning of 20 V.S.A. §§ 3131 and 3132(a). Most of the items had fuses and were labelled as fireworks. Several of the items, some of which were not labelled, were readily identifiable as sparklers. In an earlier case challenging a motorcycle helmet law as void for vagueness, we commented that "[t]he easiest method [for determining whether a helmet is approved under the statute] is labelling." *Benning*, 161 Vt. at 484, 641 A.2d at 764. Likewise here, defendants could read the packages' labels to determine their contents. The definition of "fireworks" did not make the prohibitory statute, 20 V.S.A. § 3132(a), void for vagueness as applied to the facts of these cases.

■ Defendants nonetheless contend that the statute does not contain sufficiently precise standards to avoid arbitrary and discriminatory enforcement. To support this argument, defendants allege that Officer Werner had to consult with the Department of Transportation and the American Pyrotechnic Institute to determine whether the items in question were fireworks. A similar argument was raised in *Benning*. 161 Vt. at 484, 641 A.2d at 763. As in *Benning*, we reject defendants' suggestion that "disagreement over how the statute should be implemented" amounts to a showing of vagueness. *Id.* Moreover, the fact that there might be a risk of arbitrary or discriminatory enforcement as to others does not aid these defend-

ants. Viewed in the light of the facts presented, we conclude that defendants were not subject to arbitrary or discriminatory enforcement of the statute.

## IV.

The fourth claim of error is that the jury instructions failed to charge that mens rea is an element of 20 V.S.A. § 3132(a). This issue surfaced on December 5, 1995, the day before Dann's trial and two days before Wurzberger's trial, when the State filed motions in limine in both cases to exclude evidence of the 1987 and 1992 seizure of fireworks from Wurzberger's store. In response, each defendant filed proposed jury instructions, along with a memorandum arguing that mens rea is a required element of the offense. The proposed instructions required the jury to find that "defendant intended to do the specific act which is an essential element of the offense" and that defendant acted with "some bad purpose."

Both Judge DiMauro and Judge Wesley charged the jury that, in order to convict, it must find that defendants acted "knowingly" and that their acts were "voluntary and conscious and not because of mistake, inadvertence, accident or some other innocent mistake." Neither judge adopted the "specific act" or "bad purpose" language in defendants' proposed jury instructions. Judge DiMauro's charge, however, included language that was functionally equivalent to the "specific act" and "bad purpose" instructions; we therefore see no grounds for reversal as to defendant Dann on this issue.[2] Wurzberger objected to the charge because it was not as he proposed.

In his brief to this Court, defendant Wurzberger argues generally for a "mens rea" instruction, as he did below. Defendant does not specify the error in the intent charge; he claims instead that the trial court's instruction amounted to a charge of strict liability. While we address the issue of what mental state is required by 20 V.S.A. § 3132(a), we seriously question whether defendant has properly preserved an objection. Cf. *Weaver v. Georg Karl Geka Brush*, 166 Vt. 98, 107, 689 A.2d 439, 445 (1996) (objection that fails to address

---

[2] Judge DiMauro charged the jury that, in order to convict, it had to find that Dann *knowingly possessed fireworks and that he acted unlawfully:* "For the act to be unlawful, it must have been done willfully, contrary to law. In other words, the act must be shown to have been done in disregard of the law or to disobey the law." This added language required the jury to find that defendant intentionally disobeyed the law, as defendant requested in his proposed instruction.

inadequacies in charge actually given does not comply with V.R.C.P. 51(b); same wording in V.R.Cr.P. 30). We consider (1) whether the offense of selling fireworks requires intent to sell fireworks, and (2) whether the offense of selling fireworks requires the jury to find that defendant intended to do something unlawful. See *State v. Mott*, 166 Vt. 188, 195-97, 692 A.2d 360, 365-66 (1997) (addressing what mental element is required for offense).

In looking at the mental element in the context of this case, we stress three factors. First, when considering statutory crimes without a common-law antecedent, the determination of the required mental element is a question of statutory construction. See *id.* Thus, our goal is to give effect to legislative intent, and in doing so we consider the subject matter of the law, its effects and consequences, and the reason and spirit of the law. See *Lane v. Town of Grafton*, 166 Vt. 148, 151, 689 A.2d 455, 456 (1997). Second, we emphasize that we are reviewing a specific charge in a specific case. Thus, the standard of review is whether the instructions taken as a whole breathe the true spirit of the law, such that the jury has not been misled. See *State v. Roy*, 151 Vt. 17, 24, 557 A.2d 884, 889 (1989). Even if the instructions are not as well-worded as we or the appellant might desire, we will not reverse a conviction for error in the instructions if that standard has been met. Third, we note that the offense of selling fireworks is not defined in terms of the results of the sale — for example, the injury that might be caused by the use of fireworks. In such cases, the mental element may have to be expressed in terms of that result, introducing a component of conscious wrongdoing. See 1 American Law Institute, Model Penal Code § 2.02(2)(b)(i), (ii). Nothing in the statutory scheme suggests that a defendant must intend to bring about harm to purchasers or believe that such harm will result.

As a preliminary matter, we agree with defendants and the trial court that § 3132(a) does not create a strict-liability offense, despite the absence of a mental element in the statute. See *State v. Audette*, 149 Vt. 218, 221, 543 A.2d 1315, 1317 (1988) (when Legislature is silent as to mens rea required for particular offense, Court will not simply assume that statute creates strict liability offense). We next determine whether the offense requires an intent to sell fireworks.

As the United States Supreme Court has observed, "The element of intent in the criminal law has traditionally been viewed as a

bifurcated concept embracing either the specific requirement of purpose or the more general one of knowledge or awareness." *United States v. United States Gypsum Co.*, 438 U.S. 422, 445 (1978). We have often described the mental-state requirement as one of scienter, or knowledge. See *State v. Kerr*, 143 Vt. 597, 604-05, 470 A.2d 670, 673-74 (1983). In the leading case of *State v. Audette*, we reversed a kidnapping conviction because the jury instructions failed to require that the defendant acted "knowingly or purposefully with regard to his actions which constituted forcibly confining the victim." 149 Vt. at 223, 543 A.2d at 1318.

For some crimes the distinction between knowledge and intent can be important. See *Mott*, 166 Vt. at 196, 692 A.2d at 366. In *Mott*, the defendant was charged with sending a letter in violation of an abuse prevention order, and we held that intent to send the letter supplied the necessary mental element even if the defendant had no actual knowledge that the sending of the letter violated the order. We reasoned from the statutory scheme that it was the defendant's responsibility to read and obey the abuse prevention order and he could not rely on ignorance of its terms to avoid criminal responsibility. Here, we see little difference between an intent to sell fireworks and a knowing sale of fireworks. See *State v. Lang*, 164 Vt. 598, 598, 664 A.2d 267, 268 (1995) ("knowing restraint" under kidnapping statute is shown if State proves "defendant intended 'to accomplish the precise act which the law prohibits'") (quoting *Audette*, 149 Vt. at 220, 543 A.2d at 1316). Both convey basically the same concept and appear to be consistent with the statutory scheme; either would be consistent with our standard of review. Thus, there was no error in failing to charge, as requested, that defendant must have intended to commit the elements of the offense.

Defendant Wurzberger also sought an instruction requiring the jury to find that he intended to do something he knew was illegal. We do not believe, however, that a requirement of intent to violate the law is consistent with the statutory scheme before us. We have generally applied the maxim "Ignorantia legis non excusat" with the corresponding rule that everyone must be conclusively presumed to know the law. See *State v. Fanger*, 164 Vt. 48, 53, 665 A.2d 36, 38 (1995); *State v. Woods*, 107 Vt. 354, 356-57, 179 A. 1, 2 (1935). Thus, we cannot accept ignorance of the law as a blanket defense. Under defendant's formulation, a retailer may sell fireworks as long as he has never determined whether such a sale is unlawful. There is no

indication of legislative intent to allow such a defense. We therefore hold that the jury instruction on the mental element required for the crime of selling fireworks breathed the spirit of the law and did not mislead the jury. There is no error in it.

In rejecting Wurzberger's definition of the required mental element, we do not suggest that a defendant's understanding of the law is always irrelevant to criminal liability. Thus, it may be a defense to criminal liability under a criminal statute that the defendant reasonably relied upon a judicial decision declaring the statute unconstitutional. See *United States v. Albertini*, 830 F.2d 985, 989 (9th Cir. 1987); see generally 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.1(e)(2), at 592 (1986) (reasonable reliance on decision of lower court may be raised as defense). Wurzberger never formulated this defense, and it was cut off by the grant of the motion in limine, which prevented the introduction of evidence to show reasonable reliance on prior decisions. He has not appealed the ruling on the motion in limine. To the extent that Wurzberger should have been able to show that it was unfair to charge him criminally after the earlier rulings, the means to do this was not through an expanded definition of the crime that made his knowledge of the law an element of the offense.

## V.

The fifth claim of error concerns the denial of defendants' motion to disqualify Judge Theresa DiMauro, who presided over pretrial matters in both cases and over the trial in defendant Dann's case. Defendants filed a motion to recuse Judge DiMauro, asserting that their counsel had learned from another lawyer that the judge "is a good friend of State's Attorney Dan Davis." They also moved for permission to depose State's Attorney Davis. Judge DiMauro refused to disqualify herself, stating that there is "absolutely no social relationship between myself" and Davis, and no social relationship between her husband and Davis. She referred the motions to the Administrative Judge, who denied both motions because they were based on "nothing more than innuendo and unsubstantiated suspicions." Defendants moved to reconsider, attaching an affidavit of their lawyer, who stated that he had learned of the social relationship from another lawyer, who in turn learned it from Davis. The other lawyer would not give an affidavit. The Administrative Judge denied the motion to reconsider.

■ Defendants apparently rely on A.O. 10, Canon 3E(1), which requires a judge to disqualify herself "in a proceeding in which the judge's impartiality might reasonably be questioned." Pursuant to V.R.Cr.P. 50(d), the final arbiter of a motion to disqualify a judge is the Administrative Judge for Trial Courts. We review the decision of the Administrative Judge for abuse of discretion. *State v. Putnam*, 164 Vt. 558, 564, 675 A.2d 422, 426 (1996). We will reverse only "if the record reveals no reasonable basis for the decision." *Ball v. Melsur Corp.*, 161 Vt. 35, 40, 633 A.2d 705, 710 (1993).

■ We discussed in detail the standards applicable to motions to disqualify in *Putnam*, and we will not reiterate them all here. We stress that in general the Canon does not involve per se disqualification rules for particular types of relationships, and it is the movant's burden to make a record on which a disqualification decision can be reached. *Putnam*, 164 Vt. at 562-63, 675 A.2d at 424-25. Here, the only allegation was that the judge is or was a "good friend" of the state's attorney, a description so broad that it might, or might not, embody activities that would cause one to reasonably question Judge DiMauro's actions in a criminal case brought in Windham County by the state's attorney's office.[3] It was well within the discretion of the Administrative Judge to find the allegation too broad and vague to support disqualification.[4]

■ We also affirm the decision of the Administrative Judge to deny defendants the opportunity to depose State's Attorney Davis. The Administrative Judge had discretion on whether to authorize the deposition. See V.R.Cr.P. 15(e)(4) (depositions are authorized in misdemeanor cases only on agreement of parties or for good cause shown). The allegation was so broad and vague that the Administrative Judge could view the deposition as a fishing expedition. On the other hand, a deposition of opposing counsel, or the supervisor of

---

[3] As an additional reason to disqualify Judge DiMauro, defendant Wurzberger asserts that he had sued State's Attorney Davis in a civil rights action in federal court, and that Judge DiMauro's rulings on the constitutionality of the fireworks statute, res judicata and collateral estoppel would greatly affect the federal case. Wurzberger has not detailed the interrelationship between these cases, and it is not obvious. In any event, we have ruled that the decisions on the issues he specified were correct as a matter of law. Thus, even if some relationship with Davis affected these rulings, the effect is harmless.

[4] The motion to reconsider supported the allegation on which the motion to disqualify was based, but it was not more specific. It also demonstrated the third-hand nature of the allegation.

opposing counsel, necessarily chills the adversary system and should not be authorized without a clear showing of need. There was no abuse of discretion.

## VI.

Defendant Wurzberger's sixth and seventh claims of error are that the court wrongly denied as untimely his motions to dismiss on the grounds of selective prosecution and contractual bar to prosecution. The trial court ruled that Wurzberger's motions were based on defects in the institution of the prosecution, and were not timely under Rule 12 of the Vermont Rules of Criminal Procedure. Rule 12 requires certain defenses and objections to be raised before trial and in a timely fashion. Among those are "[d]efenses and objections based on defects in the institution of the prosecution." V.R.Cr.P. 12(b)(1). Except as otherwise provided, all pretrial motions must be presented either at a scheduled status conference or, if no status conference is held, within twenty-eight days after arraignment. V.R.Cr.P. 12(c). The court need not consider motions that are untimely, and failure to raise prescribed issues, even issues based on constitutional grounds, will constitute waiver. V.R.Cr.P. 12(f); *State v. Clark*, 152 Vt. 304, 306, 565 A.2d 1332, 1333 (1989).

The Vermont rule is based on the similar federal rule. In *Davis v. United States*, 411 U.S. 233, 241 (1973), the Supreme Court described the policy reasons for imposing time limits on raising defenses based on defects in the institution of the proceeding:

> The waiver provisions of [federal] Rule 12(b)(2) are operative only with respect to claims of defects in the institution of criminal proceedings. If its time limits are followed, inquiry into an alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of a trial.

Because "[a] selective-prosecution claim is . . . an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution," *United States v. Armstrong*, 517 U.S. 456, 463, 116 S. Ct. 1480, 1486 (1996), the federal courts have held that both the policy behind Rule 12 and its wording require that a selective prosecution defense be raised by a timely motion to dismiss. See *United States v. Mann*, 884 F.2d 532, 539 (10th Cir. 1989); *United States v. Jarrett*, 705 F.2d 198, 204-05 (7th Cir. 1983); see generally 24

Moore's Federal Practice § 612.05[3], at 612-20 n.9 (3d ed. 1997). We find the reasoning of these courts persuasive and hold similarly that a defense of selective prosecution is governed by V.R.Cr.P. 12(b)(1) and must be raised by pretrial motion.

For purposes of the time limit of Rule 12, we can find no relevant difference between the defense of selective prosecution and the defense of contractual bar. In this case, the latter defense was based on Wurzberger's assertion that in 1987 the state's attorney offered not to prosecute him for selling fireworks if he agreed not to sue the officer who searched his store. Wurzberger alleges that he accepted these terms, and a contract was formed. Like the defense of selective prosecution, Wurzberger's defense was that it was improper to bring this proceeding. Moreover, this defense is unrelated to the merits of the prosecution and may obviate the need to prepare for trial. Fair administration of justice requires that this defense be raised early before the case proceeds to the merits.

■ Rule 12(f) allows the court to grant relief from the waiver "for cause shown." Wurzberger argues that it was error to deny relief in this case. The motion to dismiss was made shortly after the cancellation of a jury drawing, some nine months after the expiration of the time limit set by Rule 12. Wurzberger gave no reason for the delay other than a claim that his research had not shown that the motion was subject to Rule 12(b)(1). He noted that he stated he would raise the defense of contractual bar in a memorandum in support of an interlocutory appeal filed five months earlier. The trial court found that Wurzberger had not demonstrated good cause for relief from the waiver. This was a discretionary ruling, reversible here only for abuse of discretion. See *State v. LaGoy*, 136 Vt. 39, 41-42, 383 A.2d 604, 606 (1978). We conclude that the ruling fell within the court's discretion.

*Affirmed.*