STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 58-5-14 Vtec |

| | |
|---|---|
| WhistlePig LLC A250 Land Use Permit<br>9A0348 | DECISION ON MOTION |

### Decision on Cross-Motions for Summary Judgment

The matter now before the Court relates to Act 250 Land Use Permit # 9A0348 ("the Permit") issued to WhistlePig, LLC ("WhistlePig") by the District 9 Environmental Commission ("the Commission") on April 7, 2014. The sole issue raised in WhistlePig's appeal of the Permit is whether Act 250 jurisdiction should be limited to the approximately 8.1 acres of WhistlePig's land where commercial development has and will be constructed rather than the entire 467-acre tract owned by WhistlePig. Neighboring property owners George Gross and Barbara Wilson, d/b/a Solar Haven Farm, LLC ("Solar Haven Farm") move for summary judgment on this issue, asking the Court to hold as a matter of law that Act 250 jurisdiction attaches to the entire tract. WhistlePig cross-moves for summary judgment, arguing that only the 8.1 acres of commercial development is subject to Act 250 jurisdiction and that the remaining farmland is exempt. The Vermont Natural Resources Board ("NRB") has filed memoranda in support of Solar Haven Farm's motion. WhistlePig is represented in this appeal by Jon Anderson, Esq.; Solar Haven Farm is represented by Gerald Tarrant, Esq.; and the NRB is represented by Melanie Kehne, Esq. and Peter Gill, Esq.

### Factual Background

For the sole purpose of putting the pending cross-motions for summary judgment into context the Court recites the following facts which are undisputed unless otherwise noted:

1. Raj Bhakta and/or WhistlePig, LLC own or control several parcels of farm land in the Town of Shoreham, Vermont.

2. One of these parcels is an approximately 467 acre tract located at 2139 Quiet Valley Road in Shoreham, Vermont ("the Project Tract"). The Tract was formerly known as the Norris Farm and has historically been the location of a farming operation.

1

3.    The Project Tract contains a commercial development where WhistlePig intends to distill, bottle, and age rye whiskey ("the Commercial Development"). The Commercial Development includes a building containing offices and a whiskey bottling facility, four existing or replaced storage barns, a fifth barn that will house the whiskey distillery, a parking area, the project's wastewater treatment system, and the existing well that serves as the project's water supply. The Commercial Development encompasses approximately 8.1 acres.

4.    There is also an area used to grow rye grain on the Project Tract, which WhistlePig intends to use in the whiskey distillery. Some of the Project Tract also contains forested land and a portion of the Project Tract contains wetlands and the Lemon Fair River.

5.    WhistlePig represents, through an affidavit of Jeff Kozak, WhistlePig's Chief Operations Officer and Chief Financial Officer, that the portions of the Project Tract not used for either the Commercial Development or for growing rye grain are being used and/or may be used as a sugarbush, as pasture for cows, pigs, horses, and/or sheep, or for rural recreation.

6.    The only dispute that Solar Haven Farm raises to this representation is that a large storage building adjacent to, but not included in, the 8.1 acre Commercial Development area has been used to store whiskey barrels. Solar Haven Farm has provided no evidence to contradict the representation of WhistlePig's Chief Operations Officer that the remainder of the Project Tract is used in the manner that WhistlePig represents.

7.    After WhistlePig constructed a portion of the above listed Commercial Development without an Act 250 Permit, the Vermont Natural Resources Board ("NRB") initiated an enforcement action against WhistlePig. To resolve this matter, the NRB and WhistlePig entered into an Assurance of Discontinuance ("AOD"), which was entered as a judicial order by this Court. Natural Resources Board v. Raj Bhakta and WhistlePig, LLC, No. 95-7-13 Vtec, Order and Assurance of Discontinuance at 3 (Vt. Super. Ct. Envtl. Div. Aug. 12, 2013) (Walsh, J.) ("the 2013 AOD"). In the 2013 AOD, WhistlePig stipulated that their already-constructed and operating commercial development required an Act 250 permit and agreed to pay a fine to the NRB of $18,750.00, in light of their failure to obtain that permit. Id. The 2013 AOD required that WhistlePig apply for an Act 250 Permit for any commercial development on the Project Tract. The Project Tract is described in the AOD as being 467 acres.

2

8.      Pursuant to this requirement, on November 16, 2012 WhistlePig submitted an Act 250 permit application for the development already undertaken as well as additional development activity, including a still and associated facilities for aging and storing the whiskey produced on the Project Tract.

9.      On April 7, 2014 the District Commission granted WhistlePig an Act 250 Permit, Land Use Permit # 9A0348, for this development.  This is the permit that is on appeal in this matter.

## Analysis

WhistlePig is the only party that appealed the Act 250 Permit.  The sole issue raised in WhistlePig's Statement of Questions is whether Act 250 jurisdiction attaches to the entire 467 acre Project Tract on which WhistlePig's commercial operation is located, or whether it is only the 8.1± acre portion of the tract containing the Commercial Development that triggers the requirements of Act 250.  Solar Haven Farm and WhistlePig have each moved for summary judgment on this issue.

## I.      Summary Judgment Standard

The Court must grant a motion for summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a).  Each party asserting that a fact cannot be or is genuinely disputed must file a statement of facts and supporting affidavits, documents, or other materials.  V.R.C.P. 56(c).  The Court must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party the benefit of all reasonable doubts and inferences.  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citation omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures). The Court "need consider only the materials cited in the required statements of fact, but it may consider other materials in the record."  V.R.C.P. 56(c)(3).  When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences.  City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

3

## II.     The 2013 Assurance of Discontinuance and Court Order

Solar Haven Farm argues that the 2013 AOD precludes WhistlePig from now arguing that Act 250 jurisdiction attaches only to the 8.1 acre Commercial Development, and not to the entire 465 acre Project Tract, under the doctrines of res judicata or collateral estoppel.  In the Statement of Facts contained in the AOD, the property is described as "an approximately 467 acre parcel located at 2139 Quiet Valley Road, recorded in Book 68, pages 395, 397–400 of the town of Shoreham land records (Project Tract)."  The AOD also states that WhistlePig "may continue their present commercial operations on the Project Tract, however, no further improvements shall be made on or to the Project Tract unless an Act 250 Land Use Permit and/or Permit Amendment is first obtained."  It is based on this language that Solar Haven Farm argues that WhistlePig is now precluded from contesting Act 250 jurisdiction over the entire tract.

Under the doctrine of res judicata, also known as claim preclusion, a party is precluded from litigating an issue where "there exists a final judgment in a former litigation in which the parties, subject matter and causes of action are identical or substantially identical."  In re Cent. Vt. Pub. Serv. Corp., 172 Vt. 14, 20 (2001) (quotation and internal quotation marks omitted). "The doctrine does not require that the claims were actually litigated in the prior proceedings; rather, it applies to claims that were or should have been litigated in the prior proceeding."  Id. (citing Lamb v. Geovjian, 165 Vt. 375, 380 (1996))

Collateral estoppel, also known as issue preclusion, "is similar in effect but more narrow in scope."  Id. (citing Berlin Convalescent Ctr. v. Stoneman, 159 Vt. 53, 56 (1992)).

> The elements of collateral estoppel are: (1) preclusion is asserted against one who was a party in the prior action; (2) the same issue was raised in the prior action; (3) the issue was resolved by a final judgment on the merits; (4) there was a full and fair opportunity to litigate the issue in the prior action; and (5) applying preclusion is fair.

Id. (citing State v. Dann, 167 Vt. 119, 126 (1997)).  The purposes of both forms of preclusion are judicial efficiency, finality of decisions, preventing vexatious litigation, and avoiding inconsistent judicial decisions.  Id.

We cannot find that the 2013 AOD satisfies the elements of either res judicata or collateral estoppel.  The 2013 AOD and the enforcement action that it resolved did not have the

4

same parties as the matter now before the Court and was not an identical or substantially identical cause of action. The 2013 AOD resolved WhistlePig's violation of the Act 250 requirement that it obtain a permit prior to undertaking commercial development. The underlying facts and violation relate only to whether or not a permit was required for that development and not the extent to which the Act 250 Permit would encumber the entire Tract as described in the AOD. Furthermore, the legal issue raised in this appeal was not raised in or resolved by the AOD and the description of the Project Tract as containing the whole 467 acre is insufficient to put any party on notice that the jurisdictional issue now before the Court was adjudicated in that action. There is no question that the WhistlePig parcel is 467 acres; what is at issue is whether or not the entire Project Tract is subject to Act 250 jurisdiction, even though the portion of the Tract not containing the commercial development is, and has been, dedicated to farming. WhistlePig is, therefore, not precluded from litigating that issue in this appeal under either the res judicata or collateral estoppel doctrines.

### III.     Act 250 Jurisdiction over the Entire Project Tract

The parties do not dispute that Act 250 jurisdiction attaches to the commercial activities that are the subject of the Act 250 Permit presently under appeal, which includes the 8.1± acre Commercial Development. Rather, the parties dispute the scope of the "permitted project," and whether it encompasses the entire Project Tract. The general "bright line test" for determining the scope of the permitted development is that Act 250 jurisdiction attaches to "the 'entire tract of land on which the construction occurs, even if construction only occurs on a portion of it.'" In re Eastview at Middlebury, Inc., 2009 VT 98, ¶ 15, 187 Vt. 208 (quoting In re Stonybrook Condominium Owner's Ass'n, Declaratory Ruling # 385, Findings of Fact, Conclusions of Law, and Order, at 14–15 (Vt. Envtl. Bd. May 18, 2001). Thus, absent an exception, the general rule is that the entire 467 acre Project Tract is subject to Act 250 jurisdiction.

The former Environmental Board, this Court, and the Vermont Supreme Court have all recognized, however, that application of this bright line rule is not appropriate in all cases. As a result, "[a] 'permitted project,' therefore, may ultimately encompass 'something less than the entire tract' where construction on a portion of the tract bears an insufficient relationship with, or nexus to, the rest of the tract." Id. (quoting Stonybrook, at 18). This exception is, however,

unavailing to WhistlePig based on the undisputed facts of this case. There is certainly a nexus or relationship between, at the very least, the growing of the rye grain to be used in the whiskey production and the commercial distillery that will produce, bottle, and age that whiskey. As WhistlePig seeks to exclude that portion of the Tract from Act 250 jurisdiction, the Stonybrook exception does not support limiting Act 250 jurisdiction to only the 8.1 acres of commercial development.

WhistlePig does not, however, rely solely on the Stonybrook exception. Rather, WhistlePig points to 10 V.S.A. § 6001(3)(E) which states:

> When development is proposed to occur on a parcel or tract of land that is devoted to farming activity as defined in subdivision 6001(22) of this section, only those portions of the parcel or the tract that support the development shall be subject to regulation under this chapter. Permits issued under this chapter shall not impose conditions on other portions of the parcel or tract of land which do not support the development and that restrict or conflict with accepted agricultural practices adopted by the Secretary of Agriculture, Food and Markets. Any portion of the tract that is used to produce compost ingredients for a composting facility located elsewhere on the tract shall not constitute land which supports the development unless it is also used for some other purpose that supports the development.

The parties dispute whether this statute limits the scope of Act 250 jurisdiction in the present case.

In interpreting a statute "it is paramount that the intent of the legislature be ascertained and given effect." Vermont Alliance of Nonprofit Orgs. v. City of Burlington, 2004 VT 57, ¶ 6, 177 Vt. 47 (citing Hartford Bd. of Library Trs. V. Town of Hartford, 174 Vt. 598, 599 (2002)). "[W]hen a statute is without ambiguity and plain on its face, we will enforce it according to its terms and 'there is no need for construction. . . .'" Id. (quoting Hill v. Conway, 143 Vt. 91, 93 (1983)). If necessary, we must "interpret the statute as a whole, looking to the reason and spirit of the law and its consequences and effects to reach a fair and rational result." Miller v. Miller, 2005 VT 89, ¶ 14, 178 Vt. 273 (quoting In re Margaret Susan P., 169 Vt. 252, 262 (1999)).

It is clear from the plain language of the statute that § 6001(3)(E) applies to proposed commercial development on a tract of land devoted to farming, which is exempt from Act 250 jurisdiction under § 6001(3)(D), and therefore § 6001(3)(E) does not implicate amendment jurisdiction. The statute states unambiguously that "only those portions of the parcel or tract

6

that <u>support the development</u> shall be subject to regulation under this chapter."  <u>Id</u>. (emphasis added).  The NRB suggests that this sentence, read in context with the second sentence of § 6001(3)(E), is meant only to limit the authority of the NRB to condition development, and further that "proper application of this statute cannot result in the physical curtailment of regulatory authority WhistlePig seeks."  (NRB's Reply to WhistlePig's Cross-Motion for Summ. J. at 3, filed Jan. 22, 2015).  The Court cannot, however, ignore the plain language of the statute, which we conclude does just that.  It is clear that the Legislature intended to limit the scope of Act 250 regulation to only the portion of farm land dedicated to and <u>supporting</u> the commercial development.[1]

The parties do not dispute that the land WhistlePig uses to raise animals, for maple sugaring, or for the harvesting of crops other than rye grain do not in any way support the commercial whiskey development.  The land on the 467 acre Project Tract used for these purposes  is, therefore, exempt from Act 250 jurisdiction under § 6001(3)(E).[2]  The parties do dispute whether the land used to grow rye for use in the commercial distillery is likewise exempt under § 6001(3)(E) or whether this land is subject to regulation because it supports the commercial development.

The NRB asserts that the Legislature did not intend to exclude land used for farming from Act 250 regulation when the fruits of that farming will be used in the commercial development.  They argue that because § 6001(3)(E) specifically exempts a "portion of the tract that is used to produce compost ingredients for a composting facility located elsewhere on the tract . . . unless it is also used for some other purpose that supports the development," but contains no similar provision related to portions of the tract used to produce ingredients for a commercial development, if the farm raised ingredients are used in the commercial development, the farming "supports" the development and therefore those farm lands must be subject to Act 250 review.

---

[1]  In support of this reading WhistlePig submitted affidavits from state senator Robert Starr and Clark Hinsdale III, a farmer and former president of the Farm Bureau, who were both involved in the passage of § 6001(3)(E).  Solar Haven Farm has moved to strike these two affidavits.  As the Court does not rely on the affidavits in question but, rather, is able to resolve the dispute based on the plain language of the statute the motion to strike is moot.

[2]  It is unclear from the undisputed facts what portion of the 467 acre Project tract this land comprises.

We believe that the reason and spirit of the statute is clear from its plain language: to prevent Act 250 regulation of land dedicated to farming. As the NRB succinctly stated, "Act 250 regulates the development, not farming." (NRB's Response to Solar Haven Farm's Mot. for Summ. J. at 5, filed Dec. 18, 2015). The Legislature's inclusion of a provision specific to compost ingredients emphasizes protection of land for composting rather than limits the applicability of the farming exemption to land dedicated to farming. It would contravene the clear purpose of the statute to preclude from the exception any farm land where the products of the farming are used in the commercial development located on the farm. It makes little sense to locate commercial development on a farm when there is no connection between the farmed ingredients and the commercial development. We also note that if the majority of the ingredients that go into the product produced by the commercial development come from the farm, the whole development is exempt. 10 V.S.A. § 6001(22)(E); Natural Resources Board Act 250 Rules, Rule 2(C)(19), Code of Vt. Rules 12 004 060, available at http://www.lexisnexis.com/hottopics/. Where less than the majority of the ingredients come from the farm, the commercial development needs an Act 250 Permit, but the land that is otherwise solely dedicated to farming should not be subject to Act 250 jurisdiction where the statute excludes farming. We therefore conclude that the Legislature did not intend that the use of the farmed ingredients alone constitute "support" of the commercial development. Thus, the land used to raise rye grain is not subject to Act 250 jurisdiction because it is land dedicated to farming and not land "supporting" the commercial development.

We do note, for the benefit of the parties, that Solar Haven Farm's primary concern relates to the additional storage of whiskey at the Project Tract. First, it is clear from the record in this proceeding and in the prior proceedings involving these parties that WhistlePig had intended, and may intend in the future, to store and age many more than the 5,984 barrels of whiskey it is approved for in the Land Use Permit now before the Court. It is also clear that the storage and aging of the whiskey produced is an integral component of the commercial development and is unambiguously regulated by the Act 250 Permit WhistlePig received. The Court therefore understands that the storage and aging of all 5,984 barrels will be done within the 8.1 acre Commercial Development and our conclusion in this matter is expressly based on that understanding. If WhistlePig stores and ages whiskey on any portion of the 467 acre parcel

8

outside of the 8.1 acre Commercial Development without an Act 250 permit or permit amendment, the Court understands that it would be in violation of this decision, the applicable Act 250 statutes and Rules, and the underlying Act 250 Permit. But, so long as the remainder of the Project Tract is used for farming activities, it is expressly exempted from Act 250 jurisdiction.

## Conclusion

WhistlePig has proposed and received a permit for commercial development on a tract of land dedicated to farming. While the entire 467 acre tract would generally be subject to Act 250 jurisdiction, because 10 V.S.A. § 6001(3)(E) expressly limits the scope of Act 250 jurisdiction to only the area of the commercial development when development is proposed on land dedicated to farming, we conclude that only the approximately 8.1 acres of the Project Tract is subject to Act 250 jurisdiction. This issue was not raised or litigated, and should not have been raised or litigated in the prior Act 250 enforcement action brought by the NRB against WhistlePig. Therefore, WhistlePig is not precluded from arguing it now. For these reasons, Solar Haven Farm's Motion for Summary Judgment is **DENIED** and WhistlePig's Cross-Motion for Summary Judgment is **GRANTED**. As this resolves the sole question posed to this Court in this appeal, the entire matter before the Court is resolved by this Decision.

This completes the current proceedings before this Court. A Judgment Order accompanies this Decision.

Electronically signed on September 2, 2015 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division